## SMITH v. CHIPLEY et al. (No. 2692.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 13, 1926. Rehearing Denied Nov. 3, 1926.)

**1. Partnership ⊙—108.**

In action by partner against copartner to recover share of profits in sale of land, fact that vendor transferred vendor's lien notes as agreed to partner *held* not to make notes profits, subject to division, without a settlement and accounting of partnership affairs.

**2. Partnership ⊙—108.**

Completion of purchase of land by partner in own name *held* not to deprive copartner of rights in land, nor to prevent partner from insisting on copartner paying part of consideration therefor, and to have accounting and settlement of partnership affairs.

**3. Partnership ⊙—108.**

One partner may not sue another in respect to matters growing out of partnership business without settlement and accounting of partnership affairs.

**4. Partnership ⊙—104.**

One partner cannot sue another for conversion of partnership funds; his only remedy being a suit in equity for an accounting.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Suit by Lora A. Chipley and husband against Morton J. Smith and others. Judgment for plaintiffs, and defendant named appeals. Reversed and remanded.

---

Lockhart & Garrard, of Lubbock, and Wm. Boyce, of Amarillo, for appellant.

Bean & Klett and Robt. H. Bean, all of Lubbock, for appellees.

JACKSON, J. This suit was instituted by Lora A. Chipley and her husband, H. D. Chipley, plaintiffs, in the district court of Lubbock county, Tex., against Morton J. Smith, W. S. Posey, O. L. Slaton, and the First National Bank of Lubbock, Tex., as defendants.

The plaintiff Lora A. Chipley alleges:

That she was formerly the wife of R. Taylor Woodson, who died about February 24, 1923, leaving a will naming her as independent executrix of his estate. That the will was duly probated, and she qualified as such executrix, and as such, as well as in her individual capacity, she instituted this suit. That, since the death of her former husband, R. Taylor Woodson, she had married H. D. Chipley.

That about, February 8, 1921, Mrs. Minnie Slaughter Veal and her husband, G. T. Veal, entered into a written contract with H. D. Chipley, by the terms of which they agreed to sell, and he agreed to buy, 19,617.28 acres of land. That H. D. Chipley was to divide the east half of the entire body of said land into labors, and the consideration for said east half of said land was $15 per acre, to be paid $2 per acre cash, and the balance in ten equal vendor's lien notes against each tract, payable, respectively, in one to ten years after December 31, 1922, with interest thereon at 7 per cent. per annum. That Chipley was given the right to sell, and required to sell, the east tier of labors first, and, after 80 per cent. of the east tier of labors were sold, the adjacent tier west should be sold, and so on until the entire east half of the whole body of land was sold or paid for by Chipley. That the minimum price at which he was to sell was $20 per acre, $3 cash, $2 of which should be paid to Mrs. Veal, and the balance of $17 evidenced by ten equal vendor's lien notes, due respectively, one to ten years after December 31, 1922, with 7 per cent. interest per annum, all of which should be consummated by said date. That, in the event the said east half of the entire body of land was sold, Mrs. Veal should transfer, without recourse, to H. D. Chipley consecutively numbered vendor's lien notes selected by her, aggregating $4 per acre, or all over $15 per acre for which the east half of said tract of land should sell, with the further agreement that, if the notes should not make the exact amount due Chipley, the difference should be paid in cash.

That thereafter H. D. Chipley conveyed to Morton J. Smith and Frank Vaughn a one-half interest in said contract, and the land described therein, and in consideration therefor Smith and Vaughn assumed one-half the obligation of the contract, and agreed to assist in the resale of the lands, and to divide the profits, 50 per cent. to Chipley and 50 per cent. to Smith and Vaughn. That on January 3, 1922, Frank Vaughn sold and assigned his interest in said contract to Smith. That on July 3, 1922, Chipley, for a valuable consideration, sold and conveyed to R. Taylor Woodson an undivided one-fourth interest in the contract and the lands covered thereby, and in consideration therefor the said Woodson agreed to assume one-fourth of the obligations of the contract, and to work in the resale of said lands and receive one-fourth of all profits arising from the handling and sale of the 19,617.28 acres, and pay one-fourth of all expenses and losses, if any, of the venture. That by reason of the foregoing Woodson became the owner of a one-fourth interest in the contract, and entitled to one-fourth of the profits arising from the sale of the Veal lands. That he performed everything incumbent upon him in carrying out the contract with Mrs. Veal, and performed all the duties owed to Smith in the venture. That thereafter Chipley sold to Smith his remaining one-fourth interest in the contract, and R. Taylor Woodson and Morton J. Smith became the joint owners of said contract for the purchase and sale of the Veal lands, and entitled to the profits thereof, one-fourth to Woodson and three-fourths to Smith. That Smith recognized Woodson as a part owner of, and entitled to, his proportionate part of the proceeds under the contract. That Woodson and Smith sold all the east half of said lands to other parties, except labors 7 and 8 in league 102, and labors 25 and 26 in league 103, which were conveyed to Morton J. Smith. He executed the vendor's lien notes required, and the deeds were for the benefit of Smith and Woodson. That as a result of the sales of the east half of the Veal lands there accrued to Morton J. Smith and R. Taylor Woodson profits amounting to $40,001.37, and in settlement thereof Mrs. Veal and her husband, by their authorized agent, paid to Morton J. Smith $618.17 in money, and transferred to him vendor's lien notes amounting to $39,383.20, among which were the notes given by Smith against labors 7 and 8 and 25 and 26 above described. The notes are then described, giving the maker, the amounts, the dates, and the land against which they were executed. That the money paid and the notes delivered by Mrs. Veal and her husband to Morton J. Smith belong, one-fourth to the plaintiff Lora A. Chipley, and three-fourths to the defendant Morton J. Smith. That no part of said money or notes has been paid or delivered to the plaintiff. That all of said notes were received and taken into possession by Smith, and he and the other defendants have at all times refused and still refuse to deliver to plaintiff one-fourth of said notes, and plain-

tiff is informed, and upon such information alleges, that some or all of said notes have been delivered by Smith to, and are now held by, the defendants W. S. Posey, O. L. Slaton, and the First National Bank of Lubbock, Tex., and all of said parties refuse to deliver the notes, or any of them, to the plaintiff. That the one-fourth interest of plaintiff in said notes is of the value of $10,000.34, which bears interest from January 1, 1923, at the rate of 7 per cent. per annum. That the labors 7 and 8 in league 102, and labors 25 and 26 in league 103, aggregating 739.2′ acres, deeded to the defendant Morton J. Smith, were by him platted into a townsite called Morton, and divided into small tracts, with streets and alleys which were dedicated to the public, and he released the vendor's lien notes against said labors, showing a clear title of record in the defendant Smith. That the defendants deny plaintiff's right to any of the money and notes received, and Morton J. Smith, the record owner of the notes, having released the lien on the labors above described, which he took subject to plaintiff's rights, said labors are impressed with a trust in her favor to the extent of the value of her entire interest in the notes and money.

She prays that she have judgment against the defendant Morton J. Smith for one-fourth of the sum of $618.90, with interest thereon from January 1, 1923, and judgment against all the defendants for the sum of $10,000.34, which is one-fourth of the value of the notes delivered to Morton J. Smith by Mrs. Veal, with interest from January 1, 1923, at the rate of 7 per cent. per annum, and costs, together with a foreclosure of her lien on said labors 7 and 8 in league 102, and 25 and 26 in league 103, and all lots, blocks, and tracts of said labors in and adjacent to the townsite of Morton, Tex., and that said property be sold in satisfaction of her judgment as under execution.

The defendant Morton J. Smith answered by general demurrer and general denial, and pleaded a verified denial of partnership and a verified failure of consideration.

At the conclusion of the testimony the court directed a verdict in favor of the defendants W. S. Posey, O. L. Slaton, and the First National Bank of Lubbock, Tex., and, as no error is predicated on such action of the court, no further consideration will be given to these defendants.

The court in his main charge in the case of the plaintiffs, who are appellees here, against Morton J. Smith, the appellant, submitted but one issue, in response to which the jury found that the profits arising from the sale of the east half of the Veal lands were the sum of $40,000. In response to special issues requested by the appellant, and given by the court, the jury found that R. Taylor Woodson did and performed everything incumbent upon him in carrying out

the contract between Mrs. Veal and H. D. Chipley; that there was a consideration for the option given H. D. Chipley by Mrs. Veal to sell or purchase the land described in the contract between such parties; and that there was a consideration for the contract in which H. D. Chipley assigned to R. Taylor Woodson a one-fourth interest in the contract between Chipley and Mrs. Veal.

On this verdict the court rendered judgment that Lora A. Chipley, joined pro forma by her husband, H. D. Chipley, do have and recover of and from Morton J. Smith the sum of $11,788, with interest thereon from November 7, 1925, at the rate of 6 per cent. per annum, together with all costs. From this judgment the case is presented to us to review the errors assigned by the appellant.

The provisions of the contract made September 3, 1921, by Mrs. Veal and her husband, as sellers, and H. D. Chipley, as purchaser, material to a consideration of the questions involved, reads:

"That said sellers have sold and agree to convey by warranty deed or deeds to the purchaser or his vendees, and that the purchaser has purchased and agrees to pay for, the following described lands, situated in Cochran county, Tex., to wit:

"League No. 120 and 4,214.0 acres out of the northern part of League No. 119 of the Knox county school land, and all of leagues Nos. 103 and 104, and 1,808.3 acres out of the north part of league 102 of the Jeff Davis county school land, containing approximately 19,617.28 acres, upon the following terms and conditions, to wit:

"(1) That the agreed consideration for the east half of said land is $15 per acre, and for the west half of said land is $10 per acre, to be paid as follows: Not less than $2 per acre cash to be paid on or before December 31, 1922, and the balance to be paid as evidenced by ten equal vendor's lien notes, payable to Mrs. Minnie Slaughter Veal against each tract, payable one to ten years from December 31, 1922, with 7 per cent. per annum interest from December 31, 1922, all payable to Mrs. Minnie Slaughter Veal, and dated the same day of deed, if deeded prior to that time, interest payable annually and providing that failure to pay either of said notes or any installment of interest when due shall at the option of the holder mature all of said notes, and containing the usual provisions for attorney's fees, and to be secured by deed of trust, as well as vendor's lien.

"(2) That the east half of said land is to be divided into labors or tracts, as per the plat attached hereto, and made a part hereof, and that said purchaser shall have the right to sell the first strip of said land at $20 per acre, not less than $3 per acre cash, not less than $2 of which shall be paid to Mrs. Minnie Slaughter Veal, and $17 per acre to be evidenced by ten equal vendor's lien notes, payable to the order of said Mrs. Minnie Slaughter Veal one to ten years, respectively, from date of sale, with 7 per cent. per annum interest, the usual provision for maturity of notes in case of default by such purchaser, and said sellers shall execute deeds to the purchaser upon compliance with said terms. * * * That, when 80 per cent. of said first

strip is sold, said purchaser shall have the right to sell the second strip upon the same terms and conditions, and, when 80 per cent. of this strip is sold, said purchaser shall then have the right to sell the next strip, and the right to sell each successive strip as 80 per cent. of the preceding strip has been sold until the east half of said lands is sold or paid for by said Chipley, provided, that all sales are made prior to December 31, 1922.

"(3) That, in the event said Chipley sells or pays for all of the east half of said land upon the above terms, and consummates this contract by paying for the west half of said land upon the terms set out in paragraph 1 of this contract, then and in that event only the said Minnie Slaughter Veal is to transfer without recourse to said Chipley consecutively numbered vendor's lien notes, to be selected by her, aggregating $4 per acre for which said east half shall have been sold; it being agreed and understood that the notes transferred to 'said Chipley shall be all of the notes against the particular tracts, and, in the event there is a small difference between said parties after the transfer of said notes, then the difference shall be adjusted by said sellers paying to said Chipley the deficiency, if any, in the amount due, or the said Chipley paying to the sellers the excess, if any, in the notes so transferred to him, as the case might be. But, in the event said Chipley fails to sell or purchase all of the east half of said land, and all of the west half under the terms of this contract, by the 31st day of December, 1922, then he shall not be entitled to any interest in the notes, or any part of the land sold herein, and shall forfeit all of his rights under this contract.

"(4) It is agreed that the west half of said land shall be conveyed to said purchaser in labors as per the attached plat, and to whom he may designate."

The contract also stipulates that Chipley is to pay the expenses of surveying and platting the land, and furnish his vendees abstracts of title to the separate tracts, and that the sellers are not to be responsible to Chipley for the $1 per acre he is to receive from sales out of the east half of the land, and that all sales made by him are to be reported to C. A. Pierce, the agent of the sellers.

On the same date, September 3, 1921, H. D. Chipley transferred and assigned to Morton J. Smith and Frank Vaughn, for a sufficient consideration, a one-half interest in said contract, and Smith and Vaughn agree to assume one-half the obligations, and to work with Chipley in the resale of the property, and that "Chipley shall receive 50 per cent. of the profits from the handling of said land, and the said Smith and Vaughn shall receive 50 per cent. and that the expenses and losses shall be borne in the same proportion."

On January 3d Frank Vaughn assigned his interest to Morton J. Smith. On July 3, 1922, H. D. Chipley, for a sufficient consideration, transferred, assigned, and conveyed to R. Taylor Woodson a one-fourth interest in and to the contract made between him and Mrs. Veal and her husband for the purchase of the 19,617.28 acres of land, Woodson agreeing to assume one-fourth of the obligations, and to work with Chipley in the resale of the property, Woodson to "receive one-fourth of the profits from the handling of the land and the expenses 'and losses" to be paid in the same proportion.

On November 22, 1922, H. D. Chipley sold and conveyed to Morton J. Smith all his right, title, and interest in and under the contract he had made with Mrs. Veal and her husband for the sale of said land, together with all moneys, commissions, and notes earned under the contract. The consideration for this transaction is set out in detail, and it stipulates that Morton J. Smith is to pay the outstanding debts and accounts incurred in the sale of the lands, and that Chipley is to continue as agent for Smith, and assist in sales, for which he is to receive 5 per cent. commission.

C. A. Pierce of Lubbock, Tex., was the attorney in fact for Mrs. Veal and her husband to execute and deliver necessary deeds and carry out and perform the contract for the Veals.

The record further discloses that the east half of the 19,617.28 acres of land was sold and conveyed in labors to different purchasers in compliance with the contract between Mrs. Veal and her husband and H. D. Chipley, and that appellant purchased, and was deeded, labors 7 and 8, in league 102, and 25 and 26 in league 103; that the west half was conveyed in labors to appellant, in compliance with said contract, and that the sales, purchases, and conveyances of the entire body of 'land were consummated within the time limit; that Mrs. Veal, through her attorney in fact, C. A. Pierce, accepted performance, and he, together with the appellant, calculated the profits made on the sales of the east half of the land, which they agreed amounted to $40,001.37, which was paid to appellant, $364.71 in cash, and the balance of $39,636.66 in notes properly transferred and delivered to appellant; that Mr. Woodson, after he acquired his interest, engaged in and assisted in the sale of the land; that, after the contract had been performed, and the settlement had on December 31, 1922, the appellant discussed with the appellee Lora A. Chipley the profits they had made, but later, in January, 1924, he notified her that he would not settle with her, as the profits were all his, and she had no interest therein; that the notes executed by appellant for a part of the purchase price of labors 7, 8, 25, and 26, described above, were a part of the notes assigned and transferred to him in payment of the profits made, which notes and lien he thereafter discharged of record by proper release.

Appellant assigns as error the action of the trial court in failing to sustain his gen-

eral demurrer to plaintiff's petition, because the contract between Mrs. Veal and H. D. Chipley, upon which appellee relies, was for the purchase or sale of 19,617.28 acres of land, and stipulates that Chipley was to subdivide this body of land into labors, and that it was to be conveyed to him, or his vendees, in labors, at any time he demanded on or before December 31, 1922, and she pleads that a partnership was entered into, but does not allege what disposition was made of the west half of said 19,617.28 acres of land; sets up no facts showing that the partnership business pertaining to the east half of the land was divisible from the partnership business pertaining to the west half thereof; fails to show a settlement of the partnership affairs; and does not ask for an accounting and settlement of the partnership affairs in her suit.

Appellee's suit is based upon the rights acquired by her in the Veal-Chipley contract, which makes one price per acre for the east half of the 19,617.28 acres of land, and a different price per acre for the west half thereof. It provides what part of the east half shall be sold first; that all the land should be subdivided into labors and separate deeds made to each labor when demanded, and how the consideration for each labor is to be paid; that, in the event the east half is sold or paid for according to the contract, and the west half is paid for in compliance with the terms thereof, Mrs. Veal would transfer to Chipley vendor's lien notes, retained against labors in the east half, amounting to $4 per acre on the acreage in the east half of said entire body of land; and expressly stipulates:

"But, in the event said Chipley fails to sell or purchase all of the east half of said land, and all of the west half under the terms of this contract, by the 31st day of December, 1922, then he shall not be entitled to any interest in the notes or any part of the land sold herein, and shall forfeit all of his rights under this contract."

The contract also provides that the west half of the land shall be conveyed to Chipley, or to whom he may designate, in labors.

In order for Chipley or the appellant and appellee, who succeeded to his rights, to be entitled to a transfer of the notes, it was necessary to dispose of the entire 19,617.28-acre tract of land in compliance with the provisions of the contract.

[1] The fact that the provisions of the Veal-Chipley contract were carried out, and Mrs. Veal transferred the vendor's lien notes as agreed, does not, under the record in this case, make the notes' profits subject to a division without a settlement and accounting of the partnership affairs.

[2] The record discloses without contradiction that, in order to close the Veal-Chipley contract by December 31, 1922, appellant purchased in his own name the entire west half of the land, and paid individually $19,008.20 in cash, and executed his notes for the sum of $76,032.80, and does not show the payment of any of the notes, nor that appellee paid any of the cash consideration for the west half of the land. The making of this transaction by appellant in his own name did not deprive appellee as a partner of any rights she may have therein, nor prevent appellant, if he acted in good faith, from insisting upon appellee's paying her part of the consideration for the west half of the land, and acquiring a pro rata interest therein. Hence, in order to have a settlement and division of the notes and cash paid by Mrs. Veal to appellant, an adjustment should be made of the rights of the parties in the west half of the land by an accounting and settlement of the partnership affairs.

[3] Under the well-established doctrine that one partner may not sue another in respect to matters growing out of partnership business without a settlement and accounting of the partnership affairs, it is our opinion that this assignment must be sustained. Danforth v. Levin (Tex. Civ. App.) 156 S. W. 569; Merriwether v. Hardeman, 51 Tex. 436; Lockhart v. Lytle, 47 Tex. 452; 20 R. C. L. 194, § 130; 21 A. L. R. notes, page 21.

[4] Appellee in her petition sets up sufficient facts to disclose a conversion by appellant of her alleged interest in the cash and notes received by him from Mrs. Veal on the east half of said 19,617.28 acres of land, but for a conversion one partner is not allowed to maintain a suit at law against the other partner; his only remedy being a suit at equity for an accounting. Snyder v. Slaughter (Tex. Civ. App.) 208 S. W. 974; 21 A. L. R. subdivision eight of the annotations, page 121.

Appellant urges numerous assignments of error to the admissibility of the testimony, the charge of the court, and the insufficiency of the evidence, none of which would be tenable as presented, if appellee had properly pleaded a suit for an accounting of partnership affairs and asked therefor.

The motion for rehearing is granted, the original opinion withdrawn, and the judgment of the trial court reversed and remanded.