## SMITH et al. v. CHIPLEY et al. (No. 3141.)

Court of Civil Appeals of Texas. Amarillo. Dec. 19, 1928.

Rehearing Denied Sept. 4, 1929. Second Motion for Rehearing Denied Sept. 11, 1929.

Lockhart, Garrard & Brown, of Lubbock, for appellants.

Bean & Klett, of Lubbock, for appellees.

RANDOLPH, J. This suit was instituted in the district court of Lubbock county, Tex., by Lora A. Chipley, joined pro forma by her present husband, H. D. Chipley, against appellants. Judgment for plaintiffs, and defendants appeal.

We refer to the statement of the case contained in the opinion of this court in Smith v. Chipley, 287 S. W. 156, No. 2692, and adopt such statement so far as it is applicable here, making such additional statements in the discussion of the propositions and assignments as are necessary.

Appellants' second, third, and fourth propositions of error will be considered in the discussion of the question we shall now present, and such propositions are as follows:

"Second Proposition.

"The Appellant sets out Assignment of Error No. 2 as his Second Proposition, as follows:

"The court erred in rendering judgment for the plaintiff and against the defendant for the reason that the pleadings of defendant and the evidence show that in cause No. 2013 in the District Court of Lubbock County, Texas, the plaintiff filed suit against the defendant, and that all parties plaintiff in said cause No. 2013 are the same as parties plaintiff in this said cause, and all the parties defendant are the same in cause No. 2013 as in this said cause, and that the same question of interest and matters in controversy existed in cause No. 2013 in the District Court of Lubbock County, the same as existed in this said cause, and that said cause No. 2013 resulted in a judgment in favor of the plaintiff in this cause against the defendant in this cause, for the sum of $11,788.00, which said judgment of the trial court was affirmed by the Supreme Court of the State of Texas (292 S. W. 209) and the said judgment was paid and satisfied, and that all matters in controversy between plaintiff and defendant in this cause were or could have been settled in cause No. 2013.

"Third Proposition.

"Where a case is tried upon the merits and a verdict is returned by the jury and the judgment of the Court rendered thereon and said judgment was affirmed upon appeal to the Supreme Court, and finally paid off, such judgment is conclusive as to the matters actually determined therein and every other matter which the party might have litigated in the cause and which they might have had decided.

"Fourth Proposition.

"Where the plaintiffs and defendants are the owners of a contract under which both plaintiff and defendant have certain interest with reference to the sale of a large body of land and the contract is to be performed as a whole, the plaintiff having brought a suit for an interest in half of the lands in question and prosecuted the same to judgment which was paid off, such plaintiff should not be entitled to recover on the same cause of action by splitting the said cause of action and bringing suit on the other half."

The appellees, in cause No. 2013 in the district court of Lubbock county, No. 2692 in this court (287 S. W. 156) and 763—4734 in the Commission of Appeals (292 S. W. 209), in their petition filed in the district court, brought suit under the contract set out in the opinion of this court in cause 2692, referred to above, seeking a recovery for the profits of the transaction involving the sale of the east half of the tract of land, of which tract the west half is here in controversy. The trial in the district court in said cause 2013 resulted in a judgment for the plaintiff Mrs. Chipley. On appeal to this court, said

cause was reversed upon the following grounds (287 S. W. 156, 160):

"(1) The fact that the provisions of the Veal-Chipley contract were carried out, and Mrs. Veal transferred the vendor's lien notes as agreed, does not, under the record in this case, make the notes' profits subject to a division without a settlement and accounting of the partnership affairs.

"(2) The record discloses without contradiction that, in order to close the Veal-Chipley contract by December 31, 1922, appellant purchased in his own name the entire west half of the land, and paid individually $19,008.20 in cash, and executed his notes for the sum of $76,032.80, and does not show the payment of any of the notes, nor that appellee paid any of the cash consideration for the west half of the land. The making of this transaction by appellant in his own name did not deprive appellee as a partner of any rights she may have therein, nor prevent appellant, if he acted in good faith, from insisting upon appellee's paying her part of the consideration for the west half of the land, and acquiring a pro rata interest therein. Hence, in order to have a settlement and division of the notes and cash paid by Mrs. Veal to appellant, an adjustment should be made of the rights of the parties in the west half of the land by an accounting and settlement of the partnership affairs.

"(3) Under the well-established doctrine that one partner may not sue another in respect to matters growing out of partnership business without a settlement and accounting of the partnership affairs, it is our opinion that this assignment must be sustained. Danforth v. Levin (Tex. Civ. App.) 156 S. W. 569; Merriwether v. Hardeman, 51 Tex. 436; Lockhart v. Lytle, 47 Tex. 452; 20 R. C. L. 194, § 130; 21 A. L. R. notes, page 21.

"(4) Appellee in her petition sets up sufficient facts to disclose a conversion by appellant of her alleged interest in the cash and notes received by him from Mrs. Veal on the east half of said 19,617.28 acres of land, but for a conversion one partner is not allowed to maintain a suit at law against the other partner; his only remedy being a suit at equity for an accounting. Snyder v. Slaughter (Tex. Civ. App.) 208 S. W. 974; 21 A. L. R. subdivision eight of the annotations, page 121.

"Appellant urges numerous assignments of error to the admissibility of the testimony, the charge of the court, and the insufficiency of the evidence, none of which would be tenable as presented, if appellee had properly pleaded a suit for an accounting of partnership affairs and asked therefor.

"The motion for rehearing is granted, the original opinion withdrawn, and the judgment of the trial court reversed and remanded."

After motion for rehearing had been seasonably filed in said cause in this court and overruled, an application for a writ of error was filed in the honorable Supreme Court of Texas by Mrs. Chipley, and the Supreme Court granted such application and referred the case to Section B of the Commission of Appeals for their investigation and decision. The Commission of Appeals, upon hearing the cause, reversed the judgment of this court and affirmed the judgment of the district court or trial court, and such judgment of the Commission of Appeals was duly adopted by the honorable Supreme Court. 292 S. W. 209–211.

On the trial of this cause involving the portions of the transaction as to the west half of said land, the defendant pleaded the judgment of the district court of Lubbock county in cause No. 2013, the disposition of the appeal of that cause in this court, and the disposition thereof by the Commission of Appeals and the Supreme Court, and further pleaded:

"This defendant would further show and represent to the Court that at the November Term, 1925, of the District Court in and for Lubbock County, Texas, in a suit therein pending, being cause No. 2013 in said Court, the said Lora A. Chipley, plaintiff herein, and husband, H. D. Chipley, were plaintiffs and the said defendant, Morton J. Smith, W. S. Posey, O. L. Slaton and the First National Bank in Lubbock, Texas, were defendants, all in their individual capacities mentioned, and for the same relief that the said plaintiffs ask here, being a suit for a part of the profit upon the Veal-Chipley contract, and said plaintiff recovered judgment upon and after a trial upon the merits and a verdict in their favor by a jury against the said defendant Morton J. Smith, for the sum of $11,788.00, and costs of suit, as by the record and proceedings thereof more fully appears, which said judgment was affirmed by the Supreme Court of the State of Texas, and the said Morton J. Smith has fully paid off and satisfied said judgment, as is shown by a copy of the plaintiff's petition in said cause attached hereto and marked 'Exhibit A' and made a part hereof. The judgment of the trial court is hereto attached and marked 'Exhibit B' and made a part hereof and the judgment and opinion of the Supreme Court is hereto attached and marked 'Exhibit C' and made a part hereof and the receipt of the said plaintiff, Lora A. Chipley, to the defendant for the payment of said judgment is hereto attached and made a part hereof and marked 'Exhibit D.'

"That in said cause No. 2013, in this said court, the plaintiff, Lora A. Chipley, repudiated the said agreement she is now suing on and which is set out in her petition herein and sought to and did stand upon her rights

under the contract between the said Veals and H. D. Chipley by virtue of her being the only heir to and under the will the estate of R. Taylor Woodson, who claimed a one-fourth interest in said Veal-Chipley original contract, and that in said cause the said plaintiff, Lora A. Chipley, disclaimed any interest in and to the lands now and here sued on in this said cause of action, as is shown by her petition which is hereto attached, in said cause of action, and by her application for a writ of error and brief to the Supreme Court of Texas in her appeal in said cause No. 2013 above referred to, in the following particulars."

Defendants, as a part of their special plea, set out certain excerpts from the application made by the appellees in this case and filed in the Supreme Court in cause No. 763—4734, wherein they allege that the plaintiffs herein were estopped by judgment from claiming any interest in the west half of the land in controversy, which excerpts will be quoted later.

On the trial of this case in the district court, the defendants, seeking to sustain such plea, introduced in evidence the following excerpts from said application for a writ of error:

#### "First Proposition.

"The judgment and holding of the Honorable Court of Civil Appeals that the purchase of the west half by the surviving partner 'in his own name did not deprive appellee as a partner of any right she may have therein nor prevent appellant, if he acted in good faith, from insisting upon appellee paying her part of the consideration for the west half of the land and acquiring a pro rata interest therein' was error, plaintiff in error says, because the mere fact, as found by the court of civil appeals that the 'appellant purchased in his own name the entire west half of the land and paid individually $19,-008.20, in cash and executed his notes for the sum of $76,032.80, and does not show the payment of any notes, nor that appellee paid any of the cash consideration for the west half of the land' does not deprive the deceased partner of any interest there, neither does it charge him with any liability, because, the plaintiff in error says, the purchase by the defendant in error in his own name with his own means made said west half his own property, and likewise the losses, if any, his losses, and not the partnership's, in the absence of pleading and proof that the purchase was wrongfully made (that is, without the consent of the deceased partner), so as to create a constructive trust.

#### "Second Proposition.

"The judgment and holding of the Honorable Court of Civil Appeals that 'in order to have a settlement and division of the notes and cash paid by Mrs. Veal to appellant, an adjustment should be made of the rights of the parties in the west half of the land by an accounting and settlement of the partnership affairs' was error, the plaintiff in error says, when there is nothing in the pleading or proof of the plaintiff or the defendant that the legal representative of the deceased partner was claiming any rights in the west half.

#### "Argument under First and Second Propositions.

"It is evident from the court's opinion that it considers the partnership affairs unsettled and to be settled as a result of its erroneous holding that the purchase by defendant in error of the west half in 'his own name' and the payment individually of his cash and the execution of 'his notes' made the purchase partnership property and the losses and expenses, if any, those of the partnership.

"We insist that the west half became the property of the individual partner and not of the partnership.

"It is not denied, but admitted, that the west half was purchased by the defendant in error with the consent of the deceased partner.

"If the plaintiff in error, or if the partnership, had furnished any of the money or notes with which to make the purchase, then there would be room for the contention that there was a resulting trust, but not so in the case stated. Or, if there was any contention that the purchase had been made contrary to agreement and in violation of good faith, then there would be ground for the claim that there was a constructive trust. There is no contention that the purchase of the west half was made by the defendant without the plaintiff's consent. On the contrary, it is to be inferred that the plaintiff's consent was given.

"If the individual partner made the purchase in his own name and with his own means and notes, with the plaintiff's consent, how can the appellate court say that the purchase was without the plaintiff's consent? If it was intended by all concerned that the purchase be made for the benefit of the individual partner, how can an appellate court assume the contrary? If the plaintiff and defendant are satisfied with the consummation of the deal, and have not complained in their pleadings that it was not satisfactorily closed, how can the appellate court hold to the contrary?

"The conclusion seems irresistible that the defendant himself became the owner in his own name and with his own means of the west half with the plaintiff's consent. If so, the property is his and not partnership property; and the losses and liabilities, if any, are his and not the partnership's. Therefore,

there are no losses or liabilities unsettled or to be settled for as to the west half between the plaintiff and defendant. They have all been settled and we challenge the defendant in error to produce an authority to the contrary.

"In line with the foregoing reasoning, we ask why the plaintiff's former husband and his partner could not settle the west half by the defendant in error purchasing same in his own name with his own means. If the defendant in error was willing to assume all the liabilities and take all the risks in order to get all the profits in the purchase of the west half, and the other partner was willing thereto, why wasn't the settlement a fair one, and who had the right to complain? The truth is, the matter was settled in that way and no one is complaining of the settlement."

In this case the defendant also introduced in evidence the defendant's first amended original answer in cause No. 2013, which answer specifically denied the partnership between Morton J. Smith and R. Taylor Woodson, deceased husband of the plaintiff, also pleading want of consideration for the various contracts; the defendant's motion for rehearing by the defendant in error filed in said cause before the Commission of Appeals seeking a rehearing of the decision of that court, in which defendant prays for a rehearing upon the following, among other grounds:

"To the Honorable Supreme Court of the State of Texas:

"Now comes the defendant in error, Morton J. Smith, and moves the court to grant him a rehearing, and on such rehearing to set aside the judgment heretofore entered in this case on the 23rd day of February, 1927, and in lieu thereof enter judgment affirming the judgment of the Court of Civil Appeals. As ground for such rehearing the defendant in error shows the following:

"1. This Court erred in the conclusion that the partnership venture, to-wit: the purchase and resale of 19617 acres of land had been fully closed prior to the institution of this suit, and rendering judgment on this conclusion. The contrary conclusion is correct, to-wit: that the partnership venture had not been closed, and that only one-half of the land had been disposed of.

### "Statement.

"As the defendant in error asserts that there was error both in the overruling of his general exception to plaintiff's petition, and in the refusal of the Trial Court to give his requested peremptory instruction, a statement of the pleadings and of the evidence together will make the situation clearer. We under this statement will refer to the pleadings and the evidence, making the statement, however, separately.

"As to the Pleading: It is alleged that Mrs. Veal agreed to sell Chipley, and he agreed to buy *19,617.28 acres of land* at the price of $15.00 per acre for the east one-half, the terms of sale of the west one-half not being stated. That Chipley was given the right to sell the east one-half and when it was sold Mrs. Veal would transfer to him vendor's lien notes representing the excess over $15.00 per acre for which the land had been sold. The plaintiff's husband acquired an undivided one-fourth interest in this contract and as consideration therefor 'agreed to assume one-fourth of the obligations of said contract and to work in the *resale* of the land; and * * * should receive *one-fourth of all profits arising* from the handling and sale of the *19,617.28 acres* of land owned by the Veals; and * * * should pay one-fourth of all expenses and losses, if any of the venture.'

"That as a result of sale of the east one-half of the Veal land profits accrued to the amount of $40,001.37, and Mrs. Veal transferred notes to that amount to the defendant Smith. That the defendant Smith refused to recognize the plaintiff had any interest in such contract. There is no *allegation as to what became of the west one-half of the land; no allegation of what the expenses of resale might have been; no allegation of any accounting or settlement.* (Tr. pp. 3 to 9.)

"As to the Facts: The contract between Veal and Chipley was for the sale and purchase of 19,617.28 acres of land at $15.00 per acre for the east one-half, and $10.00 per acre for the west one-half. It was provided that prior to final consummation of the contract Chipley could, under the terms provided, make sales of the east one-half of the land in separate tracts, and that Mrs. Veal would convey the land to purchasers produced by him, receiving the cash consideration, the vendor's lien notes being payable to her. Then follows this provision, which shows the absolute indivisibility of the contract: 'That in the event said Chipley sells or pays for all of the east half of said land upon the above terms and *consummates this contract by paying for the west half of said land,* upon the terms set out in paragraph 1 of this contract, then, and *in that event only* the said Minnie Slaughter Veal is to transfer without recourse to said Chipley consecutively numbered vendor's lien notes to be selected by her aggregating $4.00 per acre or all over $15.00 per acre for which said east half shall have been sold. * * * But in the event said Chipley fails to sell or purchase all of the east half of said land *and all of the west half* under the terms of this contract by the 31st day of December, 1922, *then he shall not be entitled to any interest in the notes or any part of the land sold herein and shall forfeit all his rights under this contract.'* (S. F. pp. 1 to 3.) Smith and Woodson (plaintiff's husband) became the owners of this contract. In the

assignment to Woodson, it, after referring to the agreement for the purchase of *19,617.28 acres of land in Cochran County*, provided that the said Woodson should 'assume one-fourth of the obligations of said contract and work with said Chipley in the resale of said property. It is agreed by all parties hereto that said Woodson shall receive one-fourth of the profits from the handling of said land and the expenses and losses shall be borne in the same proportion.'

"On December 31, 1922, the east half of the land having been sold under the Veal-Chipley contract, this contract was finally closed, at which time the west half of the land was conveyed to Morton J. Smith, Woodson's partner, who as consideration therefor paid $19,008.20 in cash, and executed notes for $76,032.80, being the consideration as stipulated in the Veal-Chipley contract. At this time Mrs. Veal's agent 'figured up the profits coming from the sales of those lands on the east half and the amount of those profits was $40,001.37, of which $364.71 was paid in cash and the balance of $39,636.66 was paid in notes,' which were delivered to Morton J. Smith with written transfer. (S. D. pp. 31–32.)

"There is no evidence as to what the expenses, if any, of the handling and resale of the land were. The contract provided that Chipley was 'to pay the expenses of having the land surveyed and platted, and the expense of furnishing his vendees abstracts of title to the separate tracts.' The evidence indicates that the land was sold in small subdivisions and this circumstance suggests that there may have been considerable expense incurred in the matter of surveying and furnishing abstracts, in addition to any other expense that would naturally be incurred in the sale of a large body of land in small subdivisions. There is no evidence of a settlement or accounting; there is no evidence as to what became of the west half of the land after its conveyance to Smith under the Chipley-Veal contract.

"The evidence, therefore, exhibits this condition of the business of the joint undertaking: Assets: $39,636.66, Notes; $364.71 cash; and title to the west half of the 19617.28 acres of land. Liabilities: $19,008.20 cash advanced by Smith, and notes for $76,032.80, executed by him when purchase contract was finally completed. No statement of expenses incurred or accounting or settlement of any character.

"2. Plaintiffs' petition herein was subject to the general demurrer, and the trial court and this court erred in not so holding, because: it appears therefrom that the suit was brought by the plaintiff as representative of a partner or joint adventurer against the other partner or adventurer, for the recovery of profits alleged to have accrued in the venture, and it affirmatively appears that the share of the profits sued for is the result of the handling of only a part of the subject matter of the undertaking, so that the plaintiffs show no right to maintain this suit without a general accounting of the partnership business, or allegations of the disposition and closing of the business as to the remaining part of the land.

"Statement.

"Same as under Subdivision I hereof.

"3. The Appellant's requested peremptory instruction to the jury to find for him should have been given, and this Court erred in not so holding, because: it appears from both the pleading and the evidence that the defendant and plaintiff's husband were partners, or joint adventurers in the purchase and resale of 19,617.28 acres of land, and that such partners were to share in the profits, losses and expenses of such transaction; it further appears that the east half of said land had been sold; and notes for $40,000.00 delivered to the defendant Smith, which would be profits on the sale of the east half of said land, provided the notes were collected, and there were no expenses in connection therewith; but it does not appear that the joint adventure or partnership had been closed by any disposition of the west half of the land that would enable the Court to determine what might be the final profits of the undertaking.

"Statement.

"Same as under Subdivision I hereof.

"Argument.

"We accept as correct this statement of the law quoted by the Court as the basis of its decision:

"'The authorities are in quite general, although not full accord that, when the partnership is formed to carry out a single transaction or venture, the same is fully closed, and does not involve complicated accounts, one partner may maintain an action at law against his co-partner for his share of the profits or losses of the venture, without first having a formal accounting.'

"We respectfully urge the Court to review the record with confidence that when it does so, it will reverse its conclusion that the case made by the pleading and the evidence brings the plaintiff within this rule."

The Commission of Appeals in the first case, referred to as 763—4734, held that, the partnership having been formed to carry out a single transaction and that said transaction was fully closed, the plaintiff in that cause should recover as for conversion. 292 S. W. 209.

■ Under the facts as established by the record, was the plaintiff estopped from a recovery in this cause by the recovery in cause No. 763—4734, as the judgment of the Com-

mission of Appeals therein awarded to her, by the affirmance of the judgment of the district court of Lubbock county? It is clear that the plaintiff in that case, in her application for a writ of error, as set out in the application for writ of error, and in the proceedings before those courts, as indicated in the record, expressly disclaimed having any interest in the west half of the land in controversy. This is especially true in the presentation of the matter in the application for the writ. In said application, the plaintiff admitted that *"we insist that the west half became the property of the individual partner and not of the partnership;" "it is not denied, but admitted, that the west half was purchased by the defendant in error with the consent of the deceased partner." "If it was intended by all concerned that the purchase be made for the benefit of the individual partner, how can an appellate court assume the contrary? If the plaintiff and defendant are satisfied with the consummation of the deal and have not complained in their pleadings that it was not satisfactorily closed, how can the appellate court hold to the contrary?"*

Similar expressions appear in the application, indicating to our minds that the plaintiff in that case was disclaiming any interest in the west half in order to show that there was nothing further pending between the partners which would require an accounting between them. In the case now before this court, the plaintiff sues for her part of the profits as the widow of the deceased, R. Taylor Woodson, arising from the contract involving the west half. In our view of the case, the assertion of any claim to the west half or interest in the proceeds from the sales thereof is wholly inconsistent with the position occupied by the plaintiff in the presentation for the application for the writ of error to the Supreme Court. This being true, the plaintiff cannot be allowed to benefit by the effect of her admission in the former suit and then turn around and assert the contrary in this suit. In other words, Mrs. Chipley, in her application for the writ of error filed in the Supreme Court, takes a position tantamount to saying: "The judgment of the Court of Civil Appeals is rendered because they seek to make me responsible for the debts of the appellant upon the west half when I have no interest in the west half and never had any. The east half is the only half in which I assert an interest and as to that half the transaction is closed and no accounting is necessary."

Under the judgment rendered by the Commission of Appeals in affirming the judgment of the district court of Lubbock county, Mrs. Chipley has benefited to the extent of approximately $12,000, which has been paid to her.

These positions taken by appellee in the two cases are so inconsistent that we cannot consent that she recover here. We cannot thus permit a litigant to "blow hot and cold" in her effort to recover.

Nowhere in the record does it appear that the appellee sets up any mistake as to her statement in her application, and nowhere does she allege any mistake in the granting of the writ by the Supreme Court upon such admission made by her, and nowhere asks for the correction of said judgment and that it be brought into a settlement to be had in arriving at the accounting in the matter of the profits of the west half. Consequently, the judgment of the district court in the former case, as affirmed by the Commission of Appeals, leaves the appellee the beneficiary of said judgment, without any recourse on her for the benefit she derived thereunder.

"A party who has made an election, is bound to abide by his determination, unless he can restore the property to its original situation. The principle of election requiring a man to choose between different and inconsistent rights estops him from asserting one when he has deliberately elected to enforce the other, is a rule of natural justice which has long been known to the common law and has been enlarged and liberalized by equity." 2 Herman on Estoppel and Res Judicata, 1186, § 1057.

The general rule applied to the assertion of inconsistent rights is that the right formerly asserted must be plainly inconsistent with the right afterwards asserted. 10 R. C. L. 690. When this appears, the party will be estopped therefrom.

Where a party's admissions or allegations are inconsistent with the position he subsequently seeks to assume, to the detriment or prejudice of one who properly had a right to rely on such admissions or statements, such party is estopped from doing so. 21 C. J. 1064–1066, § 23. In this case the admission that appellee in that case had no claim to or interest in the west half of the land in controversy caused the judgment of the district court therein to be made final; the appellant had a right to rely on same, as he then paid the judgment thus made final.

It has been held that a person is bound by a respresentation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice and especially conscience and equity. On the one hand, it needs neither a consideration nor a legal obligation to support it. 10 R. C. L. 689, § 19. In the very nature of the foundation of the rule, we can see no reason why it should not be applied to the admissions now being considered, even though they were made in the course of an appeal to the highest court in our state.

It has been held in our courts also that a litigant, having taken a certain position on a trial of a case, could not take a position inconsistent therewith on a retrial of the case. Pyron v. Brownfield (Tex. Civ. App.) 269 S. W. 202, 203; Brown v. O'Brien, 11 Tex. Civ. App. 459, 33 S. W. 267–269.

It is true that the holding in those cases was occasioned by the party taking an inconsistent position in the retrial of the same case. But, whether made in the same action or in another and independent action, such admissions are binding upon the party making them. 22 C. J. 333, § 374.

The general rule, as above stated, that a litigant asserting a claim inconsistent with previous claim or position, is estopped is illustrated further by the following authorities:

Where one caused a claim against a decedent to be allowed as a partnership debt, he was estopped from thereafter claiming that it was not such, but rather the individual debt of the deceased partner. Ault v. Bradley, 191 Mo. 709, 90 S. W. 775.

The case of Flack v. Bremen, 45 Tex. Civ. App. 473, 101 S. W. 537, 540, writ denied, holds as follows:

"William Alley, the administrator, in whom lay the superior title for the benefit of the estate of Thomas Alley, having instituted this suit in the district court to foreclose the mortgage lien given for the purchase money, and, thus having put his superior title in issue and having procured a judgment of foreclosure, had a sale made by the sheriff and received the benefit thereof, would be estopped to set up that such proceedings so instituted and carried out by him, and of which he had received the benefit, were ineffectual for the purpose of passing to the purchaser the superior title."

Parties who filed an application for writ of error at the time and strenuously insisted that the Supreme Court had jurisdiction, and induced that court to take jurisdiction, were in no position to contend that the Supreme Court had no jurisdiction and that judgment had become dormant for failure of the prevailing party to issue execution within one year after determination of the Court of Civil Appeals. Long v. Martin (Tex. Civ. App.) 260 S. W. 327, writ of error dismissed 114 Tex. 581, 278 S. W. 1115.

In the oral agreement of this case, counsel for appellee asserted that he was not aware of the second contract which Smith and Woodson made with Slaton and Posey, wherein Smith and Woodson each released an interest in the original contract to Slaton and Posey for the purpose of raising money to finance a transaction involving the purchase of the land from the owner until after the decision of the case in the Supreme Court. If we concede this to be true, it puts appellee in no better position, for she has received the sum of money which she was permitted to recover by the judgment of the Commission of Appeals, and has filed no pleadings necessary to put the parties in status quo.

Should we be wrong in the conclusions arrived at and stated above, there is another phase of the case which requires the judgment of the trial court to be reversed and remanded, which we will now consider.

In the case at bar, the evidence shows that the appellant Smith bought the land in his own name (that is, the west half), paying a certain sum of money therefor, and in addition giving his vendor's lien notes against the east half in the whole of said greater tract. The trial court, after reciting the interest of each party in said west half of the tract, then recites that Smith and Posey and Slaton had drawn from the fund collected by the sale of the various tracts of land out of such greater tract certain named sums of money, and that the appellee had received nothing therefrom. The court accordingly rendered judgment that, after the amounts received by Smith, Slaton, and Posey had been charged up to their respective shares, the division and partition of the land and lien notes received from the sale thereof should be made by the partitioners between Smith, Posey, Slaton, and appellee, according to their respective shares.

It will be understood that Morton J. Smith held title of the west half, which was involved with the east half in the original contract, in trust for himself, Posey, Slaton, and Woodson; that there was outstanding against said land the sum of $8 per acre, which was a lien charged against each separate tract in said west half, but for which Smith was on the record primarily liable by reason of his assumption of same, but, as between himself and Posey and the appellee, all were liable by reason of their relationship as joint adventurers or partners in the proceeds of the sale thereof. In the judgment of the trial court herein now being considered, no provision is made with reference to a protection of any of the parties against their liability on the original purchase-money notes given to the owner of the land. The disposition of the land remaining unsold and of the secondary vendor's lien notes given by the purchasers of the land sold by Smith to them leaves the liability of the various parties to this cause upon all the unpaid vendor's lien notes given to Mrs. Veal, the original owner, unreleased, now constituting a continuing liability. In the event of either of the parties paying any portion of said outstanding vendor's lien notes to Mrs. Veal, the right of said party to compensation for such payments against his coadventurers should have been provided by such judgment; otherwise there is not and cannot be a full accounting and adjustment as between the

coadventurers. The appellee brings suit for the recovery of her share of the partnership profits and benefits, and offers to do equity. Full and complete equitable relief can only be afforded by providing an equality of responsibility in the share of the burden that incumbers the land. This is especially true when we take into consideration that the contract between the parties provides that it shall not terminate until all of the land has been sold.

We have examined the various assignments of error, and, except as herein stated, find no reversible error.

For the errors indicated, the judgment of the trial court is reversed and remanded for a new trial.