## DREEBEN v. WHITEHURST.
### No. 10858.

Court of Civil Appeals of Texas. Dallas.
Nov. 7, 1931.

Dissenting Opinion Nov. 18, 1931.

Rehearing Denied Jan. 9, 1932.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for plaintiff in error.

Eugene De Bogory, of Dallas, for defendant in error.

VAUGHAN, J.

For convenience the parties to this suit will be referred to as follows: Defendant in error, C. M. Whitehurst, as plaintiff, and plaintiff in error, Mrs. Octavine Dreeben, as defendant.

On January 21, 1929, plaintiff instituted this suit in the court below against defendant, alleging that he was a practicing attorney; that defendant had consulted him "with reference to the recovery of a certain tract 'of land" which had been "qualifiedly sold" to the county of Dallas on October 2, 1920, by a conveyance of that date which was copied in haec verba in his petition, and further alleged that plaintiff retained him to "reinvest" in her the title to the real estate conveyed by said instrument; that he had several consultations with the commissioners' court of said county of Dallas, through which he secured an order to be passed by said court directing the civil engineer of said county to inspect said land to ascertain whether it was underlaid with gravel; that after six weeks of effort he procured an order to be passed by said commissioners' court by which, in substance: " * * * The defendant should have a reconveyance of said 80 acres, for which the County had paid $30,000.00, and out of which land the County had only removed about $1,250.00 worth of gravel, and the County was to retain four acres of the ground upon which they had theretofore opened up a gravel pit, but which four acres did not contain gravel usable by the County, more than a very unconsequential amount, if any, and the gravel on said four acres was, this plaintiff alleges, of no value; thereby he had enriched the defendant to the extent of approximately $28,750.00, and caused to the defendant only the expense of his fee and the loss of four acres of ground. That while said matter was being discussed,

on or about the 22nd day of November, 1928, and after plaintiff had performed said service in defendant's behalf, the question of a fee was mentioned, and because of the fact that no fee was agreed upon between the parties, this plaintiff stated to the defendant that he would only expect what the services were reasonably worth. * * * That his remuneration would be contingent upon the result of his efforts, that is, that no fee would be due or payable to this plaintiff in the event he was not successful in recovering said land from Dallas County. * * *"

Plaintiff further alleged: "That the provisions of said order met with the approval of the defendant and she was well satisfied with the result of plaintiff's efforts in her behalf * * * but before final approval of it the fee to be charged became the subject of discussion. When it was suggested by this plaintiff that one-fourth of the land recovered or one-fourth of its value, would be a reasonable fee the defendant * * * said she would have nothing further to do with the matter, and * * * discharged the plaintiff."

Plaintiff further alleged that said commissioners' court entered an order precisely as drawn by him with the sole addition that the 4-acre tract, after the gravel had been extracted therefrom, should revert to defendant; that said order was the result of his activities; that the value of the land was $40,000 and the reasonable value of his services was one-fourth of the value of the land so recovered. The prayer was for the recovery of $5,000.

Defendant's answer consisted of a general demurrer, special exception reading as follows, "* * * It is nowhere shown in said contract or in said petition whereby there was any recovery or attempted recovery for a tract of land consisting of 80 acres from Dallas County, Texas," and a general denial.

Following are the special issues submitted and answers made thereto by the jury:

"No. 1: Do you find and believe from a preponderance of the evidence that the plaintiff, Whitehurst, was employed as an attorney by the defendant, Mrs. Dreeben, to represent her before the Commissioners' Court of Dallas County, Texas, to secure a release of the land in question? Answer: Yes.

"No. 2: Do you find and believe from a preponderance of the evidence that the plaintiff represented the defendant before the Commissioners' Court, in her behalf, to secure the release of the land in question? Answer: Yes.

"No. 3: Do you find and believe from a preponderance of the evidence that the services, if any, of the plaintiff, before the Commissioners' Court, were successful, if any, in securing an order of the Commissioners' Court to release the land in question to the defendant? Answer: Yes.

"No. 4: From a preponderance of the evidence before you, what do you find and believe is a reasonable sum, if any, if presently paid in cash, the plaintiff Whitehurst is entitled to receive, for services rendered, if any, to the defendant, Mrs. Dreeben, before the Commissioners' Court, in securing the release of the land in question, if you find and believe that the plaintiff has rendered any services? Answer: $2,500.00."

On this verdict January 9, 1930, the court rendered judgment in favor of plaintiff against defendant for the sum of $2,500, with interest thereon at 6 per cent. per annum from date, and for all costs of suit. Said findings being amply supported by the evidence are adopted by this court as findings of fact.

▇Appellant's third proposition, viz., "If the efforts of plaintiff were of any value to defendant, such value was only nominal, and the amount allowed was grossly excessive," based upon the following assignment of error, "The court erred because the verdict is excessive, and because the verdict is grossly excessive, in that the uncontroverted evidence shows that the plaintiff's services for the defendant were not worth more than $10, or in any event only a nominal sum," presents in most general terms the excessiveness of the verdict of the jury and the judgment rendered thereon.

From the above it is clear that it is not pointed out in what respect the amount of the verdict, under the facts, is claimed to be excessive. Rules for Courts of Civil Appeals, par. 26, 94 Tex. 659; City of Galveston v. Devlin, 84 Tex. 319, 19 S. W. 395; Missouri, K. & T. Ry. Co. v. Patterson (Tex. Com. App.) 228 S. W. 119; International & G. N. R. Co. v. McVey (Tex. Civ. App.) 81 S. W. 991, 1001; San Antonio, U. & G. Ry. Co. v. Storey (Tex. Civ. App.) 172 S. W. 188; Houston & T. C. R. Co. v. Shults (Tex. Civ. App.) 78 S. W. 45. We therefore hold that said assignment is too general for the proposition based thereon to be considered, same being too indefinite and uncertain.

Appellant's remaining propositions, viz.:

"(1) The instrument executed by the defendant and her husband, now deceased, had the legal effect to convey to Dallas County an interest in minerals in place, and constituted, therefore, a conveyance of an interest in land;

"(2) By statute, article 1577, the Commissioners' Court could not divest the title of Dallas County by an order, and could not dispose of the real estate of the County except by the appointment of a commissioner to sell the same at public auction,"

—are so related that same will be reviewed and discussed as presenting but one question. This discussion will require a careful consideration of the following material provisions of the instrument of date October 2, 1920, viz.:

"Intent. Party of the first part being desirous of obtaining and securing gravel for the construction of roads in Dallas County, Texas, and parties of the second part being desirous of selling and disposing of certain gravel which is owned by them, the parties of the second part agrees and contracts to sell to the party of the first part certain gravel at the following location and upon the following conditions and terms.

"Location. Situated in the County of Dallas * * * and being a part of one certain 40 acre tract of land * * * deeded to Octavine Dreeben by K. F. B. Schau, and more fully described as follows: (Here follows field notes of four acres of land),"

"Quantity and Conditions of Removal. The party of the first part agrees to remove from the above described property, seventy thousand (70,000) cubic yards of gravel, installing and operating, free from expense to the parties of the second part, such equipment, machinery, tools, and organization as are necessary for such removal, provided the land above described will furnish such seventy thousand (70,000) cubic yards of gravel; but in the event the land above described fails to furnish the seventy thousand (70,000) cubic yards of gravel; then and in that event the party of the first part is granted the privilege and right to enlarge the workings or pit on adjacent land belonging to the parties of the second part at this time, to such an extent that the seventy thousand (70,000) cubic yards of gravel may be obtained, but such enlargement or increase shall not involve additional payment or compensation of any nature whatsoever by the party of the first part to the parties of the second part, and party of the first part is hereby granted the rights in and to such additional land, if any, as may be necessary to furnish the full amount of seventy thousand (70,000) cubic yards of gravel. Parties of the second part hereby grant and give to the party of the first part easements and rights-of-way, not less than twenty feet (20') in width, such as may be necessary for removing and transporting the gravel from the pits, said rights-of-way being the most convenient routes and to be selected by the party of the first part; and said rights-of-way leading over the land of parties of the second part to the public highways. * * * The property is at all times to be open to inspection of the parties of the second part.

"Conveyance and Acknowledgment: Parties of the second part hereby bargain, sell and convey to the party of the first part and the County Judge thereof, and his successors in office, all the right, title and interest in and to the land hereinbefore described and the land adjacent and adjoining thereto in any or all directions, for the purposes hereinbefore set out, and when party of the first part shall have fully received the seventy thousand (70,000) cubic yards of gravel, as provided for herein, all the right, title, interest, and possession in said land shall revert to the parties of the second part, their heirs and assigns forever,"

—and the following order passed by the commissioners' court of Dallas county on November 22, 1928, viz.:

"That on heretofore, to-wit, the 2nd day of October, 1920, the County of Dallas, Texas, acting through its duly authorized officers, leased from Israel Dreeben and wife, Octavine Dreeben, a certain tract or parcel of land lying and being situated in the County of Dallas, State of Texas, about eight miles N. W. from Dallas, and being a part of the Benj. Merrell 320 acres timbered tract of land, Survey No. 909, Vol. 10, for the purpose of procuring gravel therefrom said contract being of record in the Deeds Records of Dallas County, Texas, Volume ———, page ———; and

"Whereas, Israel Dreeben, one of the lessors is dead, and his surviving wife and independent executrix, Mrs. Octavine Dreeben, has filed with the Commissioners Court of Dallas County, Texas, her petition and application for the release of said property described in said contract by the County of Dallas, Texas, and that same should be released to her with the exception of (here follows same description of property as that contained in preceding instrument).

"It is therefore, ordered, adjudged and decreed by the Court, that the land and premises belonging to estate of Israel Dreeben, deceased, and Mrs. Octavine Dreeben, his surviving wife, be and the same are hereby released, relinquished and forever quitclaimed from and by virtue of the contract above mentioned and the same is declared of no further force and effect, save and except, however, the four acres hereinabove mentioned and described in said original contract, and as to which four acres the original lease contract is hereby declared to be in full force and effect." (Dallas County is referred to as party of the first part, and Israel Dreeben and wife, Octavine Dreeben, as parties of the second part, in both of said instruments.)

██ Did the sale of the 70,000 cubic yards of gravel vest in Dallas county an interest in the real estate from which said gravel was to be removed? The instrument of date October 2, 1920, embodies a contract for the sale of a fixed amount of gravel, viz., 70,000 cubic yards, with the power and authority conferred upon Dallas county to remove said amount of gravel, with due continued dili-

gence or within a reasonable length of time, no fixed time being stated therein. It was 70,000 cubic yards of gravel that was sold for a specified purpose and to be removed by the county for the construction of roads in Dallas county. The right to use the land, that is, the 4 acres specifically described, and the other lands owned by the defendant and deceased Dreeben, contiguous to said 4 acres, was limited to and for the purpose of removing 70,000 cubic yards of gravel therefrom, primarily from the 4 acres specifically described, and in the event that amount could not be obtained therefrom, then to have access to and use said additional land until the county should receive the quantity of gravel contracted for; and the use of a right of way over said real estate for the purpose of removing said gravel therefrom. Therefore, we are of opinion that said conveyance only evidenced a sale of a chattel in the form of 70,000 cubic yards of gravel. Terry v. Cutts (Tex. Civ. App.) 26 S. W.(2d) 739. More than eight years intervened between the making of the contract of date October 2, 1920, and the execution of the release by Dallas county to defendant on November 22, 1928; that during said period of time Dallas county only had removed from the entire 80 acres of land, about 3,000 cubic yards of gravel; that prior to the execution of said release, Dallas county caused its engineer to make a thorough test for gravel underlying the entire surface of said 80 acres of land, with the result, as shown by the report of said engineer, that he had not been able to find gravel in sufficient quantity to enable Dallas county to obtain therefrom any appreciable amount of gravel; that acting upon this report, the commissioners' court of said county passed the order of date December 22, 1928, releasing said leasehold interest or conveyance of gravel. Under this state of facts, we do not think that the validity of the release so executed would be impaired, although it should be held that said instrument of date October 2, 1920, was a conveyance of all gravel under the surface of said 80 acres of land to be used by Dallas county in the construction of roads, so long as gravel should be found thereon in sufficient quantity to justify the county to remove gravel therefrom for such purpose, and that too without the present intent of removing or requiring that such gravel should be removed, other than as same might be needed by the county for the construction of its roads, from time to time; which of course would be a conveyance of an interest in real estate. This because, on the county having ascertained that said land did not contain gravel in such quantity as would justify it to further undertake the removal of gravel therefrom, that such ascertainment had the same effect upon the provisions of said contract that would have been produced had the county removed therefrom said 70,000 cubic yards of gravel, viz., the termination of

said conveyance. The principles here applied, we think, are clearly stated and recognized in the case of Texas Co. v. Daugherty et al., 107 Tex. 226, 176 S. W. 717, 719, L. R. A. 1917F, 989, viz.: "A fee may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition. * * * A purchaser of them within the ground assumes the hazard of their absence through the possibility of their escape from beneath the particular tract of land, and, of course, if they are not discovered, the conveyance is of no effect, just as the purchaser of solid mineral within the ground incurs the risk of its absence, and therefore a futile venture. * * * In other words, the question, it seems to us, reduces itself to this: If the oil and gas, the subject of the conveyance, are in fact not beneath or within the land, and are therefore not capable of being reduced to possession, the conveyance is of no effect. But, if they have not departed and are beneath it, they are there as a part of the realty; and their conveyance while in place, if the instrument be given any effect, is consequently the conveyance of an interest in the realty. * * * If these minerals are a part of the realty while in place, as undoubtedly they are, upon what principle can the ownership of the property interest, which they constitute while they are beneath or within the land, be other than the ownership of an interest in the realty? We are not dealing with conveyances of simply the right to take the oil and gas from the ground. These instruments purported to be a grant of the oil and gas themselves in the ground." W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 30, from which the following quotation is made: "In an opinion delivered the same day the Davis Case [113 Tex. 321, 254 S. W. 304, 255 S. W. 601] was decided, the court again said: 'It was intended by all parties that the lands should be used for no other purpose than the specified mineral exploration and production, and that the grants were to be enjoyed only while such use continued and were to immediately terminate on cessation of the use.' Continuing, the court quoted from both Kent and Tiffany in support of the proposition that it was cessation of the use for the purposes for which the grant was made, which would terminate a grant, under a clause like the second now under consideration. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 173, 254 S. W. 290, 29 A. L. R. 566. * * * Regardless of the lessee's intention, his estate terminates, under its limitation, when there is complete cessation of actual use of the land for the purposes of the lease. There can be no fraudulent evasion with respect to the use which keeps the estate alive. But it is not a partial use, * * * but cessation of use, which terminates the lessee's estate."

Also see Woods v. Bost (Tex. Civ. App.) 26 S. W.(2d) 299.

The rule is thus stated in 40 C. J. § 577, p. 987, under "Exhaustion of minerals," viz.: "The right or title obtained by the owner of minerals terminates when all the minerals have been removed and the mine exhausted, in which case the space the mineral occupied reverts to the grantor, the owner of the surface, by operation of law; and this rule applies, although the minerals were granted in fee."

In the foregoing cases, which involved oil and gas leases, they are different from the case at bar, for the reason that the leases there under consideration granted the entire minerals to the exclusive use of the lessee, whereas the sale of the gravel, as in the instant case, was not, by the terms of the conveyance, a sale of the entire gravel contained on said 80 acres of land, nor was it restricted to the use of the county during the time the county was removing therefrom the 70,000 cubic yards of gravel purchased by it.

The instrument executed as a release by the commissioners' court, acting for Dallas county, was not for the purpose of conveying title to real estate then vested in Dallas county, but to release the record effect of the conveyance of the 70,000 cubic yards of gravel made by defendant and deceased Dreeben to Dallas county, and under all of the facts surrounding this transaction, said release was properly executed and accomplished the one distinct purpose, viz., freeing defendant's real estate from any apparent leasehold estate, or title to real estate that might have been in fact acquired, or only apparently acquired by said conveyance of date, October 2, 1920, as said act on the part of the commissioners' court in executing said release did not in any respect involve a conveyance of title to real estate then owned by Dallas county. The judgment of the trial court is therefore in all things affirmed.

Affirmed.

LOONEY, J.

I dissent from the view of the majority in holding that, appellant's assignment, complaining of the excessiveness of the verdict, is too general, and in refusing to consider the same. This assignment (paragraph 20 of appellant's motion) is that the court erred (in rendering judgment against appellant) because the verdict is grossly excessive, "in that the uncontroverted evidence shows that the plaintiff's services for the defendant were not worth more than $10, or in any event only a nominal sum." In my opinion, the assignment is sufficient to direct the attention of the court to the error complained of, and complies in a substantial way with the rules and with article 1844, R. S. 1925. The meaning of the assignment is that the

verdict is excessive because the uncontroverted evidence shows that plaintiff's services were worth less than the amount found by the jury. If this be true, that is, if the uncontroverted evidence shows an excessive verdict, the case should unquestionably be reversed. Appellant was not, in my opinion, required to do more than to specify the ground relied upon with sufficient distinctness to direct the attention of the court to the error. Whether or not appellant's contention is correct will depend upon how well it is supported by the statement, authorities, and argument. Evidence should not be recited in an assignment, its proper place being in a statement supporting the assignment.

The assignment under consideration is no more general nor less specific than the assignment held sufficiently specific by the court in St. Louis, etc., R. Co. v. Kelly (Tex. Civ. App.) 173 S. W. 540, 541, where the assignment, based on the action of the court in retaxing costs, was "that the testimony fails to support the findings of fact which the court determined to be 'good cause' to adjudge all costs against the company." In First State Bank v. Knox (Tex. Civ. App.) 173 S. W. 894, 897, the court held sufficient "an assignment that complains that the verdict of the jury and judgment of the court is contrary to the law and evidence because there is no evidence to establish a fact necessary to sustain said judgment." No difference, in legal sufficiency, can be found between an allegation that the testimony fails to support a finding of "good cause" for taxing cost, and a finding that there is no evidence to establish a fact, as in the assignment just quoted, and the assignment under consideration, specifying that the uncontroverted evidence shows an excessive verdict. In each case, the challenge goes to the foundation of the verdict: In one, that the evidence fails to support the finding; in the other, that there is no evidence to establish the fact found; and in the case under consideration that the uncontroverted evidence shows an excessive verdict.

In Morrison v. Neely, 231 S. W. 728, 730, the Commission of Appeals (reversing the Court of Civil Appeals, 214 S. W. 586), in an opinion by Judge Kittrell (approved by the Supreme Court), announced a rule by which to test the sufficiency of an assignment. The court said: "When article 1612, R. S. 1911 [now article 1844], relating to the filing of assignments of error, was amended by the act of 1913 (V. S. R. S. art. 1612), after prescribing what is necessary to be done by an appellant, the provision was added, 'but an assignment shall be sufficient which directs the attention of the court to the error complained of,' which clearly indicates that the statute should be liberally construed, and it has been uniformly so construed. The principle upon which this court has acted in

710

passing upon the question is clearly stated in [Clarendon] Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105. * * * "

In Clarendon Land, etc., Co. v. McClelland, 86 Tex. 179, 187–192, 23 S. W. 576, 1100, 1103, 22 L. R. A. 105, Judge Gaines, reviewing the decisions of the Supreme Court from the beginning, announced the following doctrine:

"It is to be borne in mind that the statute and rules which require errors to be assigned were intended primarily for the relief of the appellate courts, and to secure a prompt dispatch of the business that should be brought before them. They should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions. It is certain that it was never intended to hedge either the courts of civil appeals or the supreme court around with technical and arbitrary requirements, so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts.

"Where an assignment of error is sufficiently specific to enable the court to see that a particular ruling is complained of, it should be held good, although it should fail to state the reason why such ruling is claimed to be erroneous. An assignment may be brief, and yet specific; and brevity, in such cases, is commendable, and accords with good practice. The reasons by which allegations of error are sought to be sustained find their proper place in the propositions, statements, and authorities required to be set forth in the brief under and in support of the respective assignments."

To the same effect, see Temple, etc., Co. v. Pineland, etc., Co. (Tex. Civ. App.) 25 S.W. (2d) 675, 676, and Torres v. Kansas City, etc., R. Co. (Tex. Civ. App.) 35 S.W.(2d) 229, 230.

In the light of these authorities, I am of opinion that the assignment directs the attention of court to the error, and hence is in compliance with the statute and the rules of court.

Furthermore, I am of opinion that the question as to the excessiveness of the verdict should have been reviewed as fundamental error, because obviously the case was tried on a wrong theory. Plaintiff's cause of action as pleaded is, in short, that he was employed by defendant, Mrs. Dreeben, to recover a certain tract of land consisting of 80 acres theretofore qualifiedly sold to Dallas county by defendant and her deceased husband, Israel Dreeben. Plaintiff set out in haec verba the written contract between the Dreebens and the county, which it seems plaintiff construed to be a conveyance of an interest in real estate. He alleged, among other things: "That on or about October 1,

1928, defendant consulted this plaintiff with reference to the recovery of a certain tract of land, consisting of 80 acres situated in Dallas County, Texas, from Dallas County, to which municipality said tract of land had been qualifiedly sold by the plaintiff and her deceased husband, Israel Dreeben, on the 2nd day of October, 1920, for a consideration of $30,000 * * *. That as a result of said consultations with reference to the matter, defendant retained the plaintiff, and requested him to do any and all things that might be necessary to release and recover the tract of land described in said above set forth contract from the terms of said contract and reinvest in the defendant title thereto * * *." Plaintiff alleged different efforts put forth by him, resulting in the approval of an order by the commissioners' court, agreed to by defendant, to the effect "that the defendant should have a reconveyance of said 80 acres, for which the county had paid $30,000 * * *." Plaintiff further alleged that, "When it was suggested by this plaintiff, that one-fourth of the land recovered, or one-fourth of its value would be a reasonable fee, the defendant worked herself up into a terrible rage or simulated rage, and said that she would have nothing to do with the matter and left this plaintiff's office, * * *" and, further, "Plaintiff alleges that said land is of the market value, the reasonable value and the actual value of $40,000. This plaintiff alleges that the services rendered were reasonably worth one-fourth of the value of the land recovered or one-fourth of the land so recovered," wherefore he prayed judgment for $5,000.

From these allegations, it is apparent that plaintiff's theory as to his employment by defendant was to recover from Dallas county 80 acres of land theretofore qualifiedly sold to the county of Dallas by the Dreebens, and that the reasonable value of the services rendered by him was a percentage of the full value of the land. The statement of facts shows that the evidence adduced, as to the value of the plaintiff's services, supports this theory. Among other things, plaintiff testified: "I told her (defendant) the contract (with the County) was an outright sale of the land, a conditional conveyance, and that it would be difficult to get the County to release it, in as much as they were getting gravel out of it * * *." In discussing the matter of compensation, plaintiff testified that he said to defendant: "Now, Mrs. Dreeben, I have been representing you in this matter and we never have discussed the fee, and I asked her what she thought would be a reasonable fee in the matter, and she said she did not know and she asked me then what I thought would be a reasonable fee, and I then asked her what the valuation was that she put on the property that I got released under the order, and she said she

would not sell it, and I then asked her if it was worth $40,000, or $500 an acre, and she said it was worth that and would not sell it for that price; so then I told her it was usual and customary for an attorney collecting a debt before the Probate Court, where no contest was had to charge ten per cent of the amount collected, and Mrs. Dreeben said no she didn't expect that it would cost that much; that she did not have any money, and would have to give a note if it would cost that much; so I then told her I would take an interest in the land and make out a note secured by a deed of trust on the property which I had released, and she said, no she wouldn't even do that. ` * * *"

Mr. Tom Clark, the attorney who represented the county during the time plaintiff was endeavoring to secure the order releasing the Dreeben land from the gravel contract, and therefore was more or less familiar with the services rendered by plaintiff, combining this knowledge with his knowledge as an expert, testified in regard to the value of plaintiff's services, on the idea that the land was worth $55,000; he said: "Assuming that the land he was seeking to release was worth $55,000, I would say that a reasonable attorney fee for the services performed that I testified about, on a contingent basis, would be ten per cent for the result obtained by Mr. Whitehurst."

Mr. W. B. Harrell, an attorney, testifying as an expert in answer to a hypothetical question in which was embodied the fact that the land was worth $55,000, said: "I would say that a reasonable fee for that service by that attorney as to percentage of the amount in controversy would be as follows: I would say that ten per cent. of the value of the recovery would be a modest fee; that fifteen per cent. would be a reasonable fee, and that twenty per cent. would be a good fee."

Judge Cecil Simpson also testified as an expert in answer to the hypothetical question, in which the value of the 80 acres of land was stated to be forty, fifty, or fifty-five thousand dollars; he said: "I would state that ten per cent. would be a reasonable fee on the reasonable cash value of the property, if that is the way you want to fix it. Where the services were rendered, and here are the fruits of the service, and in this particular case knowing all of the parties as I do, I would think fifteen per cent. would be a very low fee. I am familiar with the whole transaction and drew the contract mentioned * * *."

Thus the conclusion is inescapable that plaintiff not only alleged his employment to be for the recovery of land, and that he was entitled to be compensated for services rendered on the basis of the full value of the land, but all testimony adduced as to the value of his services is in support of that idea.

In the majority opinion, however, it is held that the written contract between the Dreebens and the county of Dallas was not a conveyance of real estate at all, but simply a sale by the Dreebens to Dallas county of 70,-000 cubic yards of gravel. In the course of the discussion, Judge Vaughan propounds this question: "Did the sale of the 70,000 cubic yards of gravel vest in Dallas County an interest in the real estate from which said gravel was to be removed?" After a short discussion, he answers the question as follows: "Therefore, we are of opinion that said conveyance only evidenced a sale of a chattel in the form of 70,000 cubic yards of gravel." In the majority opinion, it is further held that the order of the commissioners' court, releasing appellant's land from the gravel contract, was in no sense a conveyance of real estate. The latter holding is a necessary corollary to that preceding, to the effect that the instrument executed by the Dreebens did not convey real estate, but was simply the sale of a chattel. On this point the opinion states that: "The instrument executed as a release by the Commissioners Court, acting for Dallas County, was not for the purpose of conveying title to real estate then vested in Dallas County, but to release the record effect of the conveyance of the 70,000 cubic yards of gravel made by defendant and deceased Dreeben to Dallas County * * * as said act on the part of the Commissioners Court in executing said release did not in any respect involve a conveyance of title to real estate then owned by Dallas County." I am in accord with this construction of the gravel contract and the order of the commissioners' court releasing the same, but this characterization of the documents demonstrates that the case, as made by the evidence, is not the case pleaded by appellee, and that the trial was had and the value of appellee's services were measured on a wrong theory.

These conflicting theories appear also in the briefs of the parties. Accepting appellee's theory of the case, that is, that his employment was for the recovery of land, or an interest therein, appellant contends that appellee failed in that undertaking, in that, the order of the commissioners' court adopted at his instance, was insufficient as a conveyance of real estate within the meaning of article 1577, R. S., to reinvest title to land. Replying to this contention, appellee argues correctly (but in doing so assumes a position inconsistent with his theory of the case as plead) that the gravel contract between the Dreebens and the county is a "contract for the sale of a certain fixed amount of gravel to be removed either presently, within a fixed time, or when the time is not fixed, which would be construed into a reasonable length, as the contract before this court—that sort of a conveyance is the sale of a chattel, and the incidental right to go upon the land to

remove the gravel, makes of it no more a sale of real estate than my sale of a horse situated on my farm, with the promise that you should have the right to go on my farm to get the horse." This shifting of position illustrates the incorrectness of the theory on which the case was tried, and the fact that it was thus tried tended to produce, if it did not actually do so, an excessive verdict. The doctrine is well settled that the error in trying a case on a wrong theory is fundamental and requires reversal. National Union, etc., Co. v. Patrick (Tex. Civ. App.) 198 S. W. 1050; Otis Elevator Co. v. Cook (Tex. Civ. App.) 219 S. W. 546, 547; Stallings v. Wood (Tex. Civ. App.) 267 S. W. 537, 539; Bason v. Bason (Tex. Civ. App.) 260 S. W. 687, and authorities cited.

I think the question as to the excessiveness of the verdict should have been reviewed, and because a wrong theory prevailed that the case should have been reversed and remanded.

On Plaintiff in Error's Motion for Rehearing.

VAUGHAN, J.

The following grounds of defendant's motion, viz., (1) "The court erred in deciding this case in behalf of defendant in error upon contentions not made by him in the court below," and (2) "The court erred in deciding this case in behalf of defendant in error upon a theory wholly inconsistent with the theory presented by him below," require a full review of the case as made by the pleadings, developed by the evidence of the parties, the issues submitted to the jury, and defendant's assignments of error and propositions; this being the only means whereby the value of the grounds of said motion may be fully and correctly appraised. If the record to be so reviewed shall sustain defendant's contention in either respect, then the prayer of her motion must be granted. Smith v. Chipley (Tex. Civ. App.) 24 S.W.(2d) 87; Id., 118 Tex. 415, 16 S.W.(2d) 269; Hill v. Preston, 119 Tex. 522, 34 S.W.(2d) 780. What of the record?

The original opinion contains all of the proceedings above catalogued material to a determination of the questions under discussion, except defendant's assignments of error, viz.:

"(1) The court erred in overruling and in not sustaining defendant's general demurrer to plaintiff's petition.

"(2) The court erred in overruling and in not sustaining defendant's special exception No. 2, reading as follows: ' * * * It is nowhere shown in said contract or in said petition whereby there was any recovery or attempted recovery for a tract of land consisting of eighty acres from Dallas County, Texas.'

"(3) The court erred in instructing the jury as set forth in special issue No. 3, because the same submits a question of law to the jury.

"(4) The court erred because the verdict is excessive, and because the verdict is grossly excessive, in that the uncontroverted evidence shows that the plaintiff's services for the defendant were not worth more than $10, or in any event only a nominal sum,"

—and the testimony of three attorneys at law, viz., W. B. Harrell, Tom C. Clark, and Cecil L. Simpson, of the Dallas Bar, introduced by plaintiff to establish the value of the services rendered by him to defendant, same being in part as follows, viz.:

W. B. Harrell testified: "If a contract was had between an individual and Dallas, and provided that Dallas County should, or had the right rather, to secure 70,000 cubic yards of gravel off of the tract of land approximately eighty acres in area, and, in that contract, it was provided that the gravel should be taken from a tract approximately four acres, and further providing that if there was not that quantity of gravel in the four acres that the county should procure the gravel from any other portion of the approximately eighty acres tract; and that the contract was made in 1920, and in eight years the county had removed approximately three thousand cubic yards of the gravel; and assuming that a person having that contract with the county went to a lawyer and without an agreement as to compensation of any sort secure the services of that attorney, but procured the attorney to proceed and attempt to release the land from this contract, which was indefinite as to the time the gravel could be removed, and that this attorney spent say six weeks to two months in various visits and consultations, and spent approximately two weeks in looking up the law as to the rights of the county and this individual, and filed two petitions with the Commissioners Court praying for the release of the land from the contract, that during his efforts with the Commissioners Court he had the County Engineer make a survey as to the gravel content of the eighty acres of land, then assuming that a final order is secured from the Commissioners Court relieving all the land from the burden of the contract with the exception of approximately four acres, and then assuming he obtained that order and that upon presentation of it to the owner of the land it is satisfactory to the owner of the land, and then assuming that the land—the market value of the land—in 1928, at the time this occurred, was fifty-five thousand dollars for the whole tract, and assuming that there were about six or eight consultations running from four hours to one hour in length between the client and the lawyer—that is between the lawyer and the client, the owner of the land, and assuming that the Commissioners Court was presented with two petitions, one of character that I need not go into, and also one that was finally

approved by the Commissioners Court; and assuming that upon a discussion of a fee between the client and the attorney after the work was submitted to the court, and the work of the attorney was submitted to the client and was satisfied with it, they had a dispute as to the fee; that the client secured the services of some other attorney that used in substance, the order as approved by the Commissioners Court as presented by the original attorney, with the exception that the four acres would be released to the client at the expiration of five years regardless of whether they got seventy thousand cubic yards of gravel or not, I would say a reasonable attorney's fee for that service by that attorney, as to the percentage of the amount in controversy, would be as follows: I would say that ten per cent. of the value of the recovery would be a modest fee; that fifteen per cent. would be a reasonable fee; and that twenty per cent. would be a good fee."

Practically to the same effect was the testimony of Tom C. Clark and Cecil L. Simpson. This testimony was based upon the terms and provisions of said conveyance to Dallas county, and the services alleged to have been rendered defendant by plaintiff under his contract of employment, as alleged by him. We are of the opinion that the self-evident meaning of the language of said conveyance is that the county of Dallas purchased from defendant and her deceased husband, Israel Dreeben, 70,000 cubic yards of gravel in place, in consideration of $30,000 in cash paid, to be removed from the 4 acres described by metes and bounds, part of the 80 acres described in said conveyance, with the right and privilege of the county, in the event it should be found that said 70,000 cubic yards of gravel could not be obtained from said 4 acres "to enlarge the workings or pit on adjacent land belonging to the parties of the second part * * * (being the remaining portion of the 80 acres of land) to such extent that the 70,000 cubic yards of gravel may be obtained," and this without any limitation as to time specifically stated in said contract when all of said gravel should be removed; for that purpose, said land was "qualifiedly sold" and was burdened with the right of said county to remove therefrom said 70,000 cubic yards of gravel. This we think is the plain legal meaning and effect of said conveyance.

From October 2, 1920, the date of the conveyance to Dallas county, up to or about October 1, 1928, the date of the contract of employment alleged by plaintiff, the county only had removed 3,000 cubic yards of gravel, which exhausted the gravel on the 4 acres of land which the 70,000 cubic yards of gravel was to be primarily obtained. All of the 80 acres of land was burdened by the sale of the 70,000 cubic yards of gravel to Dallas county, and on said designated 4 acres thereof being exhausted for that purpose, the dominion of the county on all of said 80 acres became absolute for the purpose of prospecting for and removing gravel therefrom until it should obtain the full amount of 70,000 cubic yards of gravel purchased. This was the condition existing as to the rights of Dallas county when plaintiff was employed by defendant to secure for her a release of said 80 acres of land from the effect of the contract of sale of the 70,000 cubic yards of gravel to be removed therefrom. Said 80 acres was located on the Northwestern Highway (in fact, said highway was surveyed to pass through it), an important thoroughfare then being constructed by Dallas county, and in order to relieve said tract of land from the burden of the conveyance of October 2, 1920, so that defendant would be at liberty to contract an absolute sale thereof, or otherwise dispose of same at her will, she sought the assistance of plaintiff, as above stated. This qualified interest of the county in said 80 acres of land, plaintiff insisted, was a chattel interest in land in the trial court. The defendant insisted that it was an interest in the land itself; that is, it was such a transaction that a release of or reconveyance of said 80 acres of land could only be accomplished by the county through the statutory method provided for the conveyance of real estate by a county.

The words "qualifiedly sold," as used by plaintiff in his petition, undoubtedly had reference to and meant that the conveyance of said 80 acres of land to Dallas county, as recited in the instrument of date October 2, 1920, was limited or modified as to its legal effect, in that the fee-simple title to said 80 acres was not in fact conveyed or intended to be conveyed, but only an estate therein limited to the absolute sale of 70,000 cubic yards of gravel, to be removed therefrom under and in accordance with the terms and provisions in reference thereto contained in said conveyance. This we think is conclusively shown to be the correct legal effect of said words "qualifiedly sold," by the last provisions of said instrument contained in the original opinion.

This conveyance was copied in full in plaintiff's original petition, and all of his allegations as to the property rights created and conveyed thereby to Dallas county were based upon its terms and provisions. In what respect plaintiff's cause of action was tried upon a different principle or theory from that in fact alleged, or presented by him in this appeal, contrary to that upon which this cause was tried in the court below, we have not been able to develop from a careful study of the entire record. In other words, the record is barren of any proceedings from which there can be fittingly drawn inconsistent positions assumed by plaintiff in the court below, or in this court. Furthermore, we do not think it reasonably probable that defendant was misled by the statement in plaintiff's petition that the land was qualifiedly sold to

714

the county. This because defendant combatted this idea to the extent of asserting that the legal effect of said conveyance to Dallas county was to convey an interest in minerals in place and constituted therefore a conveyance of an interest in land. This was undoubtedly intended for the purpose of showing that the conveyance was not qualified in the sense that it was a conveyance of a chattel interest in land, and only after the dissenting opinion was filed did defendant contend that the case was decided in the court below in favor of plaintiff upon a cause of action not alleged by him, and that this court affirmed the judgment of the trial court upon a theory inconsistent with that presented by plaintiff in that court. In vindication of the rectitude of the majority opinion, we must of a necessity rely upon the record upon which we reached the conclusion assailed by defendant's motion and invite a careful consideration thereof that no erroneous conclusion should abide upon our labor. We have carefully considered all grounds of the motion, and same not presenting any reason why the judgment heretofore rendered by this court should be disturbed, same is in all things overruled.

Overruled.