## MARSTON v. HILL.

### No. 2459.

Court of Civil Appeals of Texas. El Paso. Nov. 6, 1930.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

Kemp & Nagle, of El Paso, for appellee.

PELPHREY, C. J.

This is an appeal from an order of the Forty-first district court of El Paso county, sustaining a plea of privilege and changing the venue to Presidio county.

This suit was instituted by appellant as plaintiff against appellee as defendant, the cause of action alleged to have arisen out of either a joint adventure or a partnership in which the parties were engaged in making a sale of the Presidio Mines located in Presidio county, Tex.

To better explain the facts surrounding the transaction out of which the suit arose, we will here quote the findings of fact as made by the trial court:

#### Findings of Fact.

"1. The following are filed as findings of fact in the sense that same are either facts or the evidence introduced was sufficient to raise an issue as to same being facts.

"2. I find that some time about the first of the year, 1926, Edwin F. Hill, who was financial agent of the Presidio Mining Company, had a verbal option from the owners of said mining company to purchase said property, exclusive of the inventory and supplies, etc.,

for the sum of $180,000.00, and that he thereupon agreed with Fred Marston who was an employee of the Presidio Mining Company, that if they secured a purchaser for such mine that they, the said Hill and Marston, would divide the profits equally between themselves.

"3. That thereupon said Fred Marston endeavored to secure a purchaser by taking the matter up with some company with which he had formerly been connected, but he failed to secure such purchaser. Plaintiff also did other things to make the property more presentable.

"4. That during this time, O. J. Pinson came to Shafter as an employee of the Presidio Mining Company and the said Hill and plaintiff thereupon took up the matter of selling the mine with Pinson, and agreed that if Pinson should find a purchaser for the mine that they, the said Hill, Marston and Pinson would divide the profits equally among them.

"5. I find that the said Pinson thereupon got in touch with the American Metals Company, and said company thereupon at once became interested in the matter and agreed to send down to Shafter a representative to inspect the mine.

"6. That the said American Metals Company became interested in said mine and it was thereupon understood that the said Hill should get his option in writing from the Presidio Mining Company. That the said Presidio Mining Company did thereupon send to said Hill an option to purchase said mine, but that it became necessary to make some alterations in such option, which were agreed upon between said Hill, Pinson and Marston, the main purpose of which being to provide for the sale of said mine for $300,000.00 instead of $180,000.00, this being to enable the said Hill and others to make provision for their profits.

"7. I find that shortly prior to this time at the suggestion of Pinson it was agreed between Pinson, Hill and Marston that they should split the commissions or profits realized, equally between them.

"8. I further find that when the contract of option was drawn up between Presidio Mining Company, Edwin F. Hill and Van Dyne Howbert, Trustee, for the American Metals Company, it was provided that the price of said mine upon which an option was given should be $300,000.00, and that $180,000.00 of this money should be paid to the Presidio Mining Company, and $120,000.00 should be paid to Pinson and Hill as follows: $80,000.00 to Pinson and $40,000.00 to Hill. That Marston's name did not appear in the option contract and that it was understood and agreed between Marston, Hill and Pinson that the interest of said Marston should come out of the interest of Pinson as provided for in said option, said option being for a period of three years.

"9. I further find that some time during the summer of 1927, the said Marston went to Europe and remained there until the latter part of 1929.

"10. I further find that in November, 1927, the American Metals Company indicated that they would give $200,000.00 for said mine and that thereupon Pinson at the request of Hill and at his (Hill's) expense, came from California to Shafter, Texas, and examined said mine and advised Hill that if he could sell the mine for $200,000.00 to do so. That thereupon the said Pinson gave Hill an option to purchase any interest standing in Pinson's name for the sum of $14,000.00, which sum Hill agreed to pay in the event he could sell the mine for $200,000.00.

"11. I find that on February 2, 1928, and during the life of said option so given by Pinson to Hill, that said mine was sold to the American Metals Company for $200,000.00, the sale being consummated at the State National Bank of El Paso, to which bank the said money was paid on that date, and the same was disbursed as follows: $14,000.00 was transmitted to C. J. Pinson in California, by the State National Bank at the direction of Pinson, with the consent of defendant, and afterwards the said Pinson remitted one-half thereof, less $50.00 expense item, to the plaintiff. That on February 2, 1928, at the State National Bank there was credited to or remitted to the Presidio Mining Company from said $200,000.00, $166,950.00, and at the same time and place under the direction of the defendant there was credited to the account of defendant's wife in the State National Bank the remainder of said $200,000.00 being made up of $6,000, and the further sum of $13,-050.00, the latter item being discount on the $180,000.00 up to the 15th day of April, 1929, at six per cent. per annum in accordance with the letter from the Presidio Mining Company to said bank read in evidence of date January 19, 1928.

"12. I find that all times covered by this transaction, at the time of the institution of this suit, and at the present time, the said Edwin F. Hill has been a resident of Presidio County, Texas, and not a resident of El Paso County, Texas.

"13. I find that the question of whether or not Marston was entitled to participate in the six per cent. discount allowed by the Presidio Mining Company above referred to, was an issuable question, but I further find that if he was so entitled to participate, it was not in any specific portion of said fund or for any interest in said fund but the same merely became an obligation if in fact there was an obligation, on the part of said Hill to pay to said Marston one-third of said $13,050.00.

"14. The name of plaintiff was left out of the said written contract dated 26th day of March, 1926, a copy of which is attached as

Exhibit B to plaintiff's first amended petition, as aforesaid, in which there was the statement in substance that if Howbert purchased for Three Hundred Thousand Dollars, there should be Eighty Thousand Dollars paid to said Pinson, the purpose of defendant, Pinson and plaintiff being not to diminish plaintiff's beneficial interest, but plaintiff's name was omitted for another reason, to-wit: That it would aid the chances of concluding a deal with the American Metals Company, it being understood that if Pinson got the Eighty Thousand Dollars, one-half of the same should go to plaintiff.

"15. That in the fall of 1927 Howbert or his company made an offer, to buy the property or exercise the option if the purchase price was reduced from $300,000.00 to $200,000.00, and conclude the deal without waiting the expiration of the lease or option, which was accepted by defendant with the consent of Pinson. Plaintiff then being absent in Europe, but he did not object thereto and when he learned thereof he approved the same.

"16. That by agreement between Hill and Presidio Mining Company made some time prior to January 19, 1928, the date of letter from Presidio Mining Company to State National Bank, that Hill made an agreement with Presidio Mining Company that if Howbert or his company should buy the properties and pay for same before the expiration of the option, then Presidio Mining Company would deduct from said $180,000.00 going to it a sum that would equal six per cent. per annum interest thereon from date to expiration of option, to-wit: April 15, 1929, and that this deduction should be paid to defendant by State National Bank from the money to be paid in by Howbert or his company.

"17. The evidence of plaintiff was sufficient to raise the issue that in entering into a joint enterprise it was agreed among Hill, Pinson and Marston that they would share equally in the profits that might be realized in event a sale was made, and that it meant what was realized after paying Presidio Mining Company such of the selling price as was necessary, to induce it to sell; and that the $13,050.00 allowed by said company as a discount to Hill was a part of such profits realized by said Hill as a result of the option granted to him by said company and not a gift to him by said Company."

Appellee filed his plea of privilege to be sued in Presidio county, which was controverted by appellant. Upon a hearing the plea was sustained and the venue ordered changed to such county.

From such order Marston has perfected an appeal to this court.

## Opinion.

Appellant presents five assignments of error assailing the judgment of the court on the following grounds: (1) That the court erred in sustaining the plea of privilege because his suit was in part to recover damages for the conversion by appellee of appellant's one-third part of the item of $13,050, said item being a part of the profits from the sale of properties upon which the option was held by appellee; that appellee received said item as a part of the consideration of his contract with the Presidio Mining Company; that under the contract existing between appellant, Pinson, and appellee, appellant became an owner in equity of one-third of said item when so received by appellee, and that appellee's conversion of appellant's one-third of said item constituted a trespass committed by appellee in El Paso county, entitling appellant to have said cause tried in El Paso county by virtue of clause 9, of Revised Statutes, article 1995. (2) That the court erred in its conclusion of law No. 1, reading as follows: "I conclude as a matter of law that the obligation if any, on the part of Hill to Marston in regard to the $13,050.00 item was contractual, so that Hill's only liability was that of a partner or party to a joint enterprise, and by virtue of such relationship he was under obligation to pay over either to Marston or to Pinson for him an amount equal to Marston's one-third of said item, less any adjustments, but that Marston owned no equitable or legal interest in the specific money of said item as would deprive Hill of the right to appropriate all of said item when received by him without rendering him a wrongful converter thereof or make his liability to plaintiff on account of the transaction within the meaning of Revised Statutes Article 1995, clause 9, which says: 'A suit based upon a trespass.' In other words, Marston's only remedy against Hill must be upon contract and not upon tort; and this is the view or ground upon which I sustain the plea of privilege." (3) That the court erred in its conclusion of law No. 2, reading as follows: "The contract creating the relationship of partnership or joint enterprise having been entered into in Presidio County, a breach thereof by one of the parties thereto by failure to account to the other party to the contract, for funds coming into his possession in El Paso County, Texas, does not constitute a trespass occurring in El Paso County within the meaning of the venue statute, even though same were appropriated in said County." And (4) because under the evidence introduced on the hearing and the facts found by the court appellant was entitled to have the case tried in El Paso county.

Appellee, on the other hand, contends (1) that appellant, having predicated his suit upon an alleged contract, cannot invoke the provisions of clauses 7 and 9 of article 1995, to give venue for the trial in a county other than the county of appellee's residence; (2) that appellant, having elected to sue upon a

contract, has waived any right of action for tort; (3) that the evidence wholly fails to show any willful or negligent wrong actively perpetrated in El Paso county; (4) that the court properly concluded that appellant's only remedy was under contract and not for tort; (5) that money is not the subject of conversion unless it can be identified or described as a specific chattel; (6) that appellant at most had a right of action against appellee for debt growing out of the partnership or joint enterprise, and that no question of appellee's liability for wrongful conversion within the meaning of subdivision 9, article 1995, was raised by the evidence; and (7) that, to give a right of action by reason of a trespass, the wrong or negligence must be active and not merely passive.

It seems that probably one party to a joint adventure may bring an action against another for conversion of his part of the profits derived from the joint enterprise, Smith v. Chipley (Tex. Civ. App.) 287 S. W. 156, if there be no need for an accounting.

Conceding that this be true, we are still confronted with the question of whether Marston, in the present case, became vested with the title to any specific part of the money received by Hill so as to maintain an action against Hill for conversion.

"Money, though property which is often difficult to identify, it is well settled that an action of trover will lie for its conversion when such identification is possible, and there is an obligation to deliver the specific money in question. * * * The general principle must, however, not be ignored that trover lies for the conversion of money only when there is an obligation resting on the defendant not to convert to his own use specific coin or notes." 26 R. C. L. pp. 1101, 1102; 38 Cyc. 2014, 2015; Jones & Co. v. Hunt, 74 Tex. 657, 12 S. W. 832; Story v. Palmer (Tex. Civ. App.) 284 S. W. 331.

In the case at bar, Hill had the right to receive the money for all the parties, and Marston had no claim on any specific part thereof which he could enforce against Hill or any other party who might receive it.

If Hill had, as he did, transferred the money received from the transaction to his wife and had paid Marston the amount due him out of other moneys which he may have had, Marston could not have complained, and he could not have refused such payment and followed the fund originally received by Hill.

After a thorough study of the authorities, we have concluded that the conclusion of the trial court that "Marston owned no equitable or legal interest in the specific money of said item as would deprive Hill of the right to appropriate all of said item when received by him without rendering him a wrongful converter thereof" was the only proper conclusion under the facts, and that the venue was properly changed to Presidio county.

The order of the trial court changing the venue is therefore affirmed.