**R. C. GRAHAM, Jr., Appellant,**

v.

**C. E. TURNER, Appellee.**

No. 5055.

Court of Civil Appeals of Texas, Waco.

Oct. 14, 1971.

Jonathan H. Allen, Dallas, R. Matt Dawson, Corsicana; Henry Akin, Dallas, for appellant.

Harry W. Margolis, Dallas, for appellee.

## OPINION

JAMES, Justice.

This suit was filed by C. E. Turner (plaintiff or appellee) against defendants R. C. Graham, Jr. (appellant) and East Fork Sand and Gravel Co., Inc. (hereinafter called East Fork) to establish a 50% ownership in behalf of Turner of East Fork and to recover a balance of $101,-569.16 allegedly due Turner for 50% of the proceeds received from sale of the assets of East Fork to Trinity Concrete Products Co., (hereinafter called Trinity), which sale took place on or about February 25, 1966, out of which proceeds appellant Graham had previously paid Turner $20,000.00.

Appellee Turner further alleged that appellant Graham had kept and appropriated appellee's share of the said sale proceeds for himself and for his own use and benefit, and had used some of the money to buy real estate and personal property in his (Graham's) own name, and that a constructive trust should be imposed upon the monies so appropriated and that such constructive trust should follow the monies into whatever real or personal properties they were converted into, and that a lien should be placed against all of such property, and for a full accounting with respect to all such monies.

Appellee Turner further sued for $100,-000 exemplary damages on the theory that appellant Graham's appropriation of the monies allegedly due Turner, and Graham's failure to pay appellee was wanton, wilful and malicious and an intentional fraud on appellee Turner.

Turner sued for judgment against Graham individually and against East Fork for damages in the sum of $101,569.16 plus interest at 6% from July 1, 1967, for $100,-000 exemplary damages, for a constructive trust and lien on all monies belonging to Graham and upon all properties into which said monies had been converted and for costs; and in addition thereto, Turner alleged that Graham distributed and conveyed

to himself individually and from East Fork interests in various gravel royalties and agreements, which conveyances were made as part of the dissolution of East Fork, and upon this alleged set of facts, Turner sued for a 50% interest in such royalties and agreements, and for 50% of all the monies collected by Graham since such conveyances in 1966, and for an accounting to establish same.

Graham and East Fork answered by general denial, a plea of the two year statute of limitations, a special denial that Turner owned 50% but that on the contrary Turner owned only one share of stock in East Fork while 998 shares belonged to Graham with the remaining one share belonging to Graham's wife, a verified denial of partnership between Turner and either defendant, and that Turner take nothing.

Graham's theory throughout the case was to the effect that never at any time were he and Turner partners, but that Turner was merely an employee of East Fork (other than Turner owning only one share out of the 1,000), and that he (Graham) was the sole owner of East Fork (with the exception of Turner's one share plus one share owned by Graham's wife); and that therefore all the sale proceeds of East Fork as well as interests and proceeds from the gravel royalties and agreements was Graham's own individual money and property, in which Turner had no interest.

The jury verdict on special issues is in effect as follows: Turner and Graham did not orally agree to the percentage in East Fork that each owned, but they impliedly agreed that they each owned 50% of the corporation; that Turner contributed to the Corporation $1700.00 in money and equipment consisting of a dragline of the market value of $40,000.00, pumps worth $3000.00, bull dozer worth $12,000.00 and trucks worth $2500.00; that the corporate stock certificates were not issued and delivered to the stockholders before dissolution of East Fork; that Turner and Graham agreed to divide the proceeds of sale of

East Fork assets on a 50-50 basis after payment of all just debts; that on or about February 23, 1966, when Turner received notice of the $20,000.00 deposit Graham had made to him, that Graham told Turner that he would receive the balance of his share within 15 months; that Graham is indebted to Turner in the amount of $81,128.63 from the proceeds of the corporate dissolution and sale; that in addition to money, Graham received an overriding royalty interest in the sand and gravel leases from said dissolution and sale, and that Turner is entitled to 50% of such gravel royalty; that Turner placed his trust and confidence in Graham with regard to the business dealings between them in this lawsuit; that thereafter Graham breached his trust and confidence in distributing the proceeds received from the dissolution and sale; that Turner paid in $500.00 of the $1,000.00 allocated as capital of East Fork; that Graham acted with malice when he distributed the proceeds from the corporate sale and dissolution; that $50,000.00 should be awarded to Turner as exemplary damages; that Graham paid $27,000.00 of the monies which he received from sale and dissolution of East Fork to his father for the release of a $32,000.00 vendor's lien note; that the purchase price of the 108 acres purchased by Graham from Luther and George Harrington et al was paid with monies Graham received from the sale and dissolution of East Fork, said purchase price being $42,-000.00; that the 20 head of cattle which Graham bought from one Reeves were paid for with money Graham received from the sale and dissolution of East Fork; that said cattle and their offspring have become so mixed with Graham's present herd that it is now impossible to separate them; that the agreement of Turner and Graham to divide the proceeds from sale of East Fork on a 50-50 basis was not breached by Graham before November 12, 1966; that Turner did not know before November 12, 1966 that Graham did not intend to make any payment to Turner; that before November 12, 1966, Turner was not aware of any facts and circumstances which would have

caused a person of ordinary prudence to make inquiry by which he would have learned that Graham did not intend to make any payment to Turner.

The trial court entered judgment that Turner take nothing against East Fork, but that Turner take judgment against Graham in the amount of $149,524.27, same being $81,128.63 actual damages, $18,395.64 interest from July 1, 1967 to the date of judgment, and $50,000.00 exemplary damages, together with interest at 6% per annum from date of judgment and costs; plus 50.% undivided interest in four certain gravel royalties and assignments conveyed by East Fork to Graham and 50.% of the monies theretofore received or collected by Graham by reason of his owning such royalties on or for the sale, conveyance or assignment of such royalties, and ordering Graham to furnish Turner with an accounting with reference to same, together with an accounting of the monies Graham received from sale and dissolution of East Fork and to pay Turner 50% of the monies due Turner pursuant to such accounting; that a constructive trust is imposed and Turner is awarded a lien on all the cattle in the care, control and ownership of Graham and a lien on an 80% interest in the real estate conveyed by Graham's father to Graham on or about September 28, 1964, together with foreclosure of such liens; that Turner recover from Graham 50% undivided interest in 108.13 acres of land conveyed to Graham by deed dated October 4, 1966, and that Graham is ordered to convey such one-half interest to Turner free and clear of any incumbrances that did not exist when Graham bought the land, and that Graham be given $21,000.00 (plus interest from July 1, 1967) credit on the judgment when such conveyance is made.

Appellant attacks the trial court's judgment upon twenty-three points of error and for convenience in discussion and disposition thereof, we will group points of like kind together.

The first four points in effect assert that Turner's cause of action is barred by the two year statute of limitation as provided in Article 5526, Vernon's Ann. Revised Civil Statutes of Texas, and that the court erred in submitting Special Issue No. 13 (which in effect found that on or about February 23, 1966, when Turner received notice of the $20,000.00 deposit, that Graham told Turner that Turner would receive the balance of his share within fifteen months).

Turner's original petition was filed November 13, 1968.

The pertinent portion of Article 5526 in effect provides that the two year limitation period bars actions for debt where the indebtedness is not evidenced by a contract in writing.

Appellant's assignments of error do not attack the jury's finding on Special Issue No. 13 on any specific grounds; however, we have concluded after examination of the 343 assignments of error in appellant's Amended Motion for new trial that such attack contains objections based upon allegations that there is no evidence to support such finding, insufficient evidence to support such finding, and that such finding is against the great weight and preponderance of the evidence. We have carefully examined the entire record in this cause and conclude that the evidence is amply sufficient to support the jury's answer to Special Issue No. 13, as well as the jury's answers to Special Issues Nos. 31, 32, and 33 (the two-year limitation issues). Appellant has not attacked the jury's findings to Special Issues 31, 32, and 33 by any assignment of error, and is therefore bound by such findings. To No. 31 it was found that the agreement of Turner and Graham to divide the proceeds from sale of East Fork on a 50-50 basis was not breached by Graham before November 12, 1966.

To No. 32 it was found that Turner did not know before November 12, 1966 that Graham did not intend to make any further payment to Turner.

To No. 33 it was found that before November 12, 1966, Turner was not aware of facts and circumstances which would have caused a person of ordinary prudence to make inquiry by which he would have learned that Graham did not intend to make any further payment to Turner.

The jury's findings to Special Issues Nos. 13, 31, 32 and 33 would compel us to hold that the plaintiff's cause of action is not barred by the two year statute of limitation as provided by Article 5526, even if the two-year statute of limitation should apply.

■ However, we are of the view that this cause is governed by the four-year statute of limitation. Turner brought this suit, as evidenced by his third amended original petition, as a stockholder of East Fork to establish a 50% interest in the corporation and to enforce his rights as a stockholder by recovering 50% of the value of the corporation's assets. Moreover, his suit was to establish a constructive trust resulting from a fiduciary relationship that grew out of Graham's business dealings with him, and to show a breach of this fiduciary relationship by Graham, and to establish contractual relationships and the breaches thereof. The jury found favorably for Turner on all these grounds of recovery.

The sale of East Fork assets was consummated in February 1966; therefore there is no contention that limitations commenced to run before this time. Since we are of the opinion that the four-year statute governs, and since Turner's suit was filed November 13, 1968, then it necessarily follows that the cause is not barred by limitation.

The jury's findings to Special Issues 19 and 20 are controlling, we believe, these being that Turner placed his trust and confidence in Graham, with regard to the business dealings between them, and that thereafter Graham breached his trust and confidence in distributing the proceeds received from the corporate dissolution and sale. Appellant has not attacked these jury's findings.

The Supreme Court has held in Greenspun v. Greenspun (1946), 145 Tex. 374, 198 S.W.2d 82, that in a suit by a stockholder of a corporation to enforce his rights as a stockholder and for an accounting, the period of limitation is four years. The facts in *Greenspun* are very similar and analogous to our case. The Supreme Court in *Greenspun* does not give the reason why the four-year statute applies, but cites Yeaman v. Galveston City Co. (1914), 106 Tex. 389, 167 S.W. 710. *Yeaman* likewise involved a suit by stockholders against the corporation and others to enforce their rights and for an accounting, in which suit the Supreme Court held that the four-year statute applies, because the relation of a corporation to its stockholders is that of a trustee of a direct trust. It arises out of the contractual relation whereby the corporation acquires and holds the stockholder's investment under express recognition of his right and for a specific purpose. In a similar vein is the holding in Peek v. Berry (1944), 143 Tex. 294, 184 S.W.2d 272, in which last-named case the Supreme Court held that the period of limitation to enforce a trust, or arising out of a breach of trust, is governed by the four-year statute of limitation under the provisions of Article 5529, Vernon's Ann.Civ.Statutes. Article 5529 provides: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

It is interesting to note that the jury found in answer to Special Issue No. 12 that Turner and Graham agreed to divide the proceeds from the sale of the assets of East Fork on a fifty-fifty basis *after payment of all just debts*. The record shows that the last debt paid was closing Federal Income taxes paid sometime in the year 1967.

■ Moreover, under the provisions of Article 6.06 of the Texas Business Corporation Act, V.A.T.S. as it existed prior to the amendment of June 17, 1967, the first requirement to dissolve a corporation was to file a statement of intent to dissolve, after which the corporation must discharge its debts and obligations; and it is only after the debts and obligations have been paid that a stockholder has any right to his part of the assets. In other words, the stockholder's cause of action does not accrue and limitation does not commence to run until all the corporate debts and obligations have been satisfied. East Fork filed its intent to dissolve on December 17, 1966.

We next proceed to Appellant's Points Five through Ten, inclusive, directed against the trial court's submission of Special Issues 14 and 15, and the jury's answers thereto. No. 14 asked whether Graham was indebted to Turner arising out of the corporate sale and dissolution of East Fork, to which the jury answered that he was. No. 15 asked:

"What sum of money, if any, do you find from a preponderance of the evidence that Graham owes Turner from the proceeds of said corporate dissolution and sale?", to which the jury answered $81,-128.63. Appellant contends that these issues are global in nature, and the trial court erred in entering judgment against appellant for $81,128.63 actual damages based upon the jury's findings to these issues.

With reference first to Special Issue No. 14, if it were the only liability issue submitted to the jury, and standing alone, then appellant's contention that it constitutes a general charge might be well-founded; however, this issue must be viewed in context with other issues submitted to and answered by the jury, also equally bearing on the liability aspect such as the following:

Nos. 2 and 3 found that Turner owned 50% of the corporation.

No. 12 found that Turner and Graham agreed to divide the proceeds from the sale of corporation assets on a 50-50 basis after payment of all just debts;

No. 13 found that on or about February 23, 1966, when Turner received notice of the $20,000 deposit, Graham told Turner that he (Turner) would receive the balance of his share within 15 months;

Nos. 19 and 20 found a fiduciary relationship and a breach thereof on the part of Graham;

Nos. 21 and 22 found that Turner and Graham each contributed an equal amount of capital to the corporation.

■ In the light of the jury's findings to the above ultimate issues, and that such findings are in harmony with the jury's answer to Special Issue No. 14, we overrule this contention of appellant. In other words, whether or not No. 14 constitutes a general charge is immaterial, because the ultimate issues were submitted correctly in other issues. Walton v. Smulcer (Ft. Worth, Tex.Civ.App.1949), 222 S.W.2d 918, (syl. 2) no writ history.

■ However, more significantly, the Supreme Court has recently enunciated a rule which we believe overrules appellant's contentions to both Special Issues Nos. 14 and 15 in Haas Drilling Co. v. First National Bank in Dallas (Tex.Sup.Ct.1970), 456 S.W.2d 886, in an opinion by Hon. Sears McGee, Associate Justice. In *Haas,* the Special Issue complained of was as follows:

"Do you find from a preponderance of the evidence that on or about March 1, 1966, the Defendant, First National Bank in Dallas, * * * agreed to assume payment as its own debt the indebtedness then owing to Haas Drilling Co., Inc., by B & B Gas and Petroleum, Inc.?" This issue was accompanied by an instruction as to what was meant by "assuming payment of the debt of another". The issue was attacked as being too broad and multifarious. In holding the Issue non-objectionable, the Supreme Court said:

"We think that Special Issue No. 1 was not too broad, because more latitude is permitted in the wording of special issues in cases other than negligence cases. All of the cases relied upon in the Court of Civil Appeals are negligence cases.

"In his 1969 Supplement on *Special Issue Submission in Texas,* Hodges notes the distinction in special issue submission in negligence and non-negligence cases; at page 71, he states: 'Since Roosth and Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953), it is quite clear that there will be no reversal in non-negligence cases simply because the issue is too broad or too small. The trial court has almost complete discretion, as long as the issue in question is unambiguous and confines the jury to the pleading and the evidence'. In fact, the opinion in Roosth and Genecov Production Co. (a negligence case) said: 'We hold it was reversible error to submit the issues in question in the form used and that on the next trial separate issues should be submitted for each item of defectiveness alleged and proved. *At the same time we do not consider that we are overruling City of Houston v. Lurie [148 Tex. 391, 224 S. W.2d 871 (1949) or Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978 (1948)] or even limiting their effect in cases other than those of negligence to which they might be applicable.'* (Italics are those of the Supreme Court.) It might be noted that all limitation issues submitted in trespass to try title cases are multifarious."

■ With reference to Special Issue No. 15, we believe the jury's answer thereto of $81,128.63 was well within the range of evidence. The business of East Fork was sold to Trinity for $345,000.00, plus $15,-000.00 for the stock pile of gravel, totalling $360,000.00. The evidence showed the net received by Graham for the business was $272,768.32. There was much factual dispute over what would constitute a proper distribution of these proceeds from this point on; however, we feel no useful purpose would be served by reviewing the contentions of the parties except to point out that Graham did pay Turner $20,000.00 shortly after he (Graham) sold East Fork to Trinity, and that this $20,000 when taken together with the jury's answer of $81,128.-63 to Issue No. 15 still puts Turner's total well within his half of the total net proceeds.

We next proceed to Appellant's points Eleven through Fifteen, inclusive, attacking the submission of Special Issues Nos. 23 and 24, and the jury's answers thereto. To No. 23 the jury found that Graham acted with malice when he distributed the receipts from the corporate dissolution and sale. To No. 24 the jury found that $50,000 should be awarded to Turner for exemplary damages, which was included as a part of the trial court's judgment in favor of Turner against Graham.

■ We sustain appellant's contention, and say the trial court should have disregarded the jury's answers to Issues Nos. 23 and 24. This case falls into the category of a suit for breach of contract, for which the proper redress is money judgment for actual damages, and for which exemplary damages are not authorized. In A. L. Carter Lumber Co. v. Saide (1943), 140 Tex. 523, 168 S.W.2d 629, Judge Alexander says: "The jury found that the seller was harsh and unreasonable in its dealings with the purchaser, and that its acts in cancelling the contract were wilful and oppressive, and were accompanied with malice. Based upon these findings, the trial court allowed a recovery for exemplary damages, and the Court of Civil Appeals affirmed the judgment. We are not in accord with this holding. The rule in this State is that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice. Houston and T. C. R. Co. v. Shirley, 54 Tex. 125; Hooks v. Fitzenrieter, 76 Tex. 277, 13 S.W. 230; Oklahoma Fire Ins. Co. v. Ross (Tex.Civ. App.) 170 S.W. 1062; Consumers' Lignite Co. v. James (Tex.Civ.App.) 204 S.W. 719; Cochran v. Hall, 5 Cir., 8 F.2d 984, 985, 25

C.J.S. Damages § 120, p. 716; 15 Am.Jur. 709; 13 Tex.Jur. 245; Annotation, 84 A.L. R. 1352".

■ Even an intentional breach of contract is not punishable by punitive damages. Nor may exemplary damages be recovered for a mere violation of a statute, whether it be one carrying a criminal penalty or not. McDonough v. Zamora (San Antonio, Tex.Civ.App.1960), 338 S.W.2d 507, error refused NRE, in an opinion by Mr. Justice Pope, and in support of this last proposition is cited Jones v. Ross, (1943), 141 Tex. 415, 173 S.W.2d 1022, 1024.

■ Appellee contends that this is a suit for conversion, and therefore exemplary damages are authorized. We do not agree. This suit is for the recovery of money, and money is a subject of conversion only when it can be described as a specific chattel. 38 Cyc. 2014, 2015. From its nature the title to money passes by delivery, and its identity is lost by being changed into other money or its equivalent in the methods ordinarily used in business for its safe-keeping and transmission. 26 R.C.L. 1102. Story v. Palmer (El Paso, Tex.Civ.App.1926), 284 S.W. 331, no writ history.

■ There may be a conversion where there was an obligation to return specific money, but not where an indebtedness may be discharged by payment of money generally. Hull v. Freedman (Fort Worth, Tex.Civ.App.1964) 383 S.W.2d 236, writ ref., n. r. e.; Marston v. Hill (El Paso, Tex.Civ.App.1930), 32 S.W.2d 520, no writ history; 14 Tex.Jur.2d, "Conversion," p. 17, par. 11. In the instant case, this was an indebtedness which was dischargeable by the payment of money generally, and therefore could not be the subject matter for a conversion suit.

Appellee further contends that this is a suit for fraud, in which exemplary damages are proper; however, this suit has neither pleadings, evidence, issues, nor jury findings on the fraud theory.

In his 16th to 18th points, inclusive, appellant complains of that part of the trial court's judgment which awarded appellee Turner 50% of the gravel royalties and monies appellant Graham had received or collected, and which ordered appellant Graham to furnish appellee Turner with an accounting regarding monies received by him (Graham) by reason of gravel royalties and assignments, and to pay Turner 50% of any such monies. That is to say, the trial court awarded Turner a 50% undivided interest in four certain gravel royalty assignments, and ordered Graham to make an accounting as to what monies Graham collected from these assignments, what monies he got from the sale, conveyance or assignment of any of them, and ordered Graham to pay Turner 50% of any such monies.

The record shows that these royalty rights had been owned and held by East Fork; however, between February and November 1966, Graham had caused these royalty rights to be assigned by East Fork to him individually; that he had collected royalty money on them while he had them and had sold or reassigned them and had in this manner received money from them; that these royalty rights were acquired by East Fork growing out of the sale of East Fork to Trinity in February, 1966.

■ Since the jury answered to Special Issue No. 15 that Graham owed Turner $81,128.63 as Turner's part of the proceeds of the corporate dissolution and sale, appellant contends that the royalty money received and collected, and money received by Graham out of sale and reassignment of these royalty interests is included in this $81,128.63 figure. We sustain this contention. These royalty rights were acquired by East Fork as a part of the sale to Trinity, and Graham's subsequent transactions concerning these royalty rights whereby he collected royalty money and conveyed and reassigned these rights are all part and parcel of the matters inquired about in Special Issues Nos. 14 and 15, and to permit appellee Turner such an additional re-

covery and accounting would be permitting him an overlapping or double recovery.

Prior to trial, appellant filed a motion requesting the court to sever the issues relating to an accounting out of this suit, which was denied by the trial court. There is no evidence in the record as to how much money Graham received as royalty payments, or how much he got for the sale and reassignment of these rights, and no issue was submitted to the jury asking how much money Graham received from these sources.

The jury's answers to Issues Nos. 14 and 15 completely circumscribe and encompass appellee's right of recovery where these royalty matters are concerned.

Appellant's 19th through 22nd points complain of the trial court's judgment imposing a constructive trust and lien on certain real and personal property, to secure appellee's judgment, and in ordering a foreclosure thereof.

 The record shows that right after the sale of East Fork to Trinity in February, 1966, Graham paid Turner $20,000.00, and that other than this, Graham kept all the rest of the money himself. The jury found in response to Special Issues 25 through 30 that Graham used the money from this corporate sale and dissolution to purchase cattle, real estate, and to pay off liens against real property which he already owned. In accordance with these jury findings, and in accordance with the fiduciary relationship between the parties, the trial court imposed a constructive trust upon the items which Graham purchased and paid off with these funds, and ordered a foreclosure thereof.

It is undisputed that the funds used to purchase (or pay off) the real and personal property in question came from the proceeds of the corporate dissolution and sale.

We think this constructive trust (and foreclosure thereof) was properly imposed

by the trial court. Smith v. Green (Amarillo, Tex.Civ.App.1922), 243 S.W. 1006, error refused.

 Although the burden of proof is initially on the person seeking to impose the constructive trust to trace the funds into the specific property sought to be recovered, once this burden is satisfied, (as in the instant case), the burden of proof shifts to the constructive trustee to show that the part of the fund used to purchase the properties was his money only. Otherwise, the whole fund is treated as trust property. Spencer v. Pettit (Tex.Com.App.1931), 34 S.W.2d 798, opinion adopted by the Supreme Court.

We have carefully considered appellant's 23rd and last point, and conclude that it does not present reversible error.

We accordingly affirm the trial court's judgment with the exception of the following changes in which respects the judgment is reformed:

(1) The $50,000 exemplary damages is hereby deleted from the judgment, and Turner is awarded judgment against Graham for $81,128.63, together with interest thereon at the rate of 6% per annum from July 1, 1967, and costs of suit;

(2) Turner's recovery of 50% of any royalty money or any other moneys other than the $81,128.63 and interest and costs hereinabove set out, together with that part of the judgment wherein he was awarded an accounting against Graham is hereby deleted from the judgment. Likewise the portion of the judgment awarding Turner a 50% undivided interest in the four gravel royalty instruments specifically set out therein is hereby deleted from the judgment.

The costs of appeal are taxed one-half to appellant and one-half to appellee.

Reformed and affirmed.