Kenneth W. FLOURNOY and June
Flournoy, Appellants,

v.

Patricia WILZ, Guardian of Jon Patrick Flournoy an Incapacitated
Person, Appellee.

No. 10–05–00089–CV.

Court of Appeals of Texas,
Waco.

July 19, 2006.

Rehearing Overruled Aug. 29, 2006.

John P. Mabry, Jr., Dunnam & Dunnam, L.L.P., Waco, for Appellants.

Percy L. "Wayne" Isgitt, C. Zan Turcotte, Isgitt & Associates, P.C., Houston, Edward T. McFarland, Lufkin, H. Fred Neale, Mexia, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This case involves a suit by Patricia Wilz on behalf of her incompetent son, Jon Patrick Flournoy, against Kenneth and June Flournoy. A jury found for Patricia and the trial court imposed a constructive trust on the entirety of the Flournoys' farm. In their sole issue, the Flournoys contend that no evidence exists to support the judgment. We affirm in part and reverse and render in part.

## BACKGROUND

Kenneth and Patricia divorced in 1973, and Kenneth received custody of their son Jon. Kenneth married June the next year. Several years later, Jon suffered incapacitating brain injuries in an automobile accident.

Kenneth, individually and as next friend of Jon, sued Ford Motor Company in federal court. In 1991, the parties entered a settlement agreement, whereby Kenneth received $379,300 on Jon's behalf and $95,000 individually. Kenneth was named guardian of Jon's person and estate.

During his term as Jon's guardian, Kenneth purchased Brookshire Grocery Stock and $330,000 in GNMA bonds for Jon's benefit. In 1991, the Flournoys purchased a farm for $153,049, paying $49,365.50 from Kenneth's individual settlement and executing a note for the remaining $103,049. The note required monthly payments of $961. Kenneth later sold 500 Brookshire shares, after which a deposit, labeled "stock," appeared in the Flournoys' account. Between 1991 and 1999, the

Flournoys withdrew several thousand dollars from Jon's account. By 2001, Jon's settlement funds were virtually depleted and he became a ward of the State.

Patricia sought and received appointment as Jon's permanent guardian. She then sued the Flournoys for conversion, breach of fiduciary duty and constructive fraud. Alleging that the Flournoys purchased the farm with Jon's funds, Patricia also sought the imposition of a constructive trust.

At trial, Patricia introduced several checks drawn on Jon's account in the amount of either $960 or $961, which were either cashed or deposited into the Flournoys' personal account. Patricia questioned the Flournoys regarding these checks and others, altered checks, missing funds, usage of Jon's funds, the source of funds for the farm purchase, the stock and the GNMA bonds. In response, the Flournoys repeatedly asserted the Fifth Amendment.

At the close of evidence, the Flournoys moved for an instructed verdict, arguing that no evidence supported the imposition of a constructive trust. The trial court denied their motion. Because it did not inquire as to the amount of Jon's funds used to acquire the farm, the Flournoys also objected to Question 5 of the Jury Charge. The trial court overruled the objection.

The jury found as follows: (1) Kenneth breached his fiduciary duty to Jon and committed constructive fraud; and (2) the Flournoys converted Jon's property, used Jon's funds to acquire the farm and acted with malice. The trial court denied the Flournoys' motion for judgment notwithstanding the verdict and imposed a constructive trust on the entire Flournoy farm.

## STANDARD OF REVIEW

A no evidence point requires consideration of "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

## ISSUES PRESENTED

The Flournoys' sole issue includes three sub-issues. First, they claim that Patricia failed to meet her tracing burden. Second, they allege that, because Patricia failed to meet her tracing burden, adverse inferences improperly served as the sole basis for the judgment. Finally, they state that no evidence supports the imposition of a constructive trust on the entire farm.

### Tracing

 A party seeking imposition of a constructive trust must strictly prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex.App.-Fort Worth 2004, pet denied). Element three requires that funds be traced "into the specific property sought to be recovered." *Graham v. Turner,* 472 S.W.2d 831, 840 (Tex. Civ.App.-Waco 1971, no writ); *see Marineau v. Gen. Am. Life Ins. Co.,* 898 S.W.2d 397, 400 (Tex.App.-Fort Worth 1995, writ denied).

 Once a party traces funds or shows that funds have been commingled, the "constructive trustee" must prove what "part of the fund used to purchase the properties was his money only;" otherwise, the "whole fund" may be subjected to a constructive trust. *Graham,* 472 S.W.2d

at 840; *see Logan v. Logan,* 138 Tex. 40, 156 S.W.2d 507, 510 (1941); *see also Marineau,* 898 S.W.2d at 400. The "wrongdoer" bears the burden of proving that his funds paid for the property "in whole or in part." *Maryland Cas. Co. v. Schroeder,* 446 S.W.2d 117, 121 (Tex.Civ.App.-El Paso 1969, writ ref'd n.r.e.).

▮ Here, the Flournoys contend that Patricia presented no evidence tracing funds from Jon's account to the Flournoys' monthly payments on the farm. They argue instead that Patricia merely showed commingling. We disagree.

According to the evidence, the Flournoys executed a note for $103,049 to purchase the farm. The note required monthly payments of $961. Of the documentary evidence presented, certain deposit slips and checks reflected that the Flournoys either cashed or deposited several checks, drawn on Jon's account, in the monthly mortgage amount. While none of these documents specifically referenced the lien holders or the mortgage, they constituted circumstantial evidence of the Flournoys' improper usage of Jon's funds to pay for the farm. It is simply not coincidental that the amounts of these checks so closely mirrored the monthly mortgage payments.

Additionally, other documentary evidence in the form of altered checks, deposits, checks drawn on Jon's account, and funds missing from Jon's account all reflect that several thousand dollars were taken from Jon's account over a period of several years. Therefore, Patricia's documentary evidence performed two functions: (1) it showed a history of misuse; and (2) it created a direct trail of funds taken from Jon's account for the purpose of paying the farm mortgage. In light of this evidence, we hold that Patricia presented evidence which "would enable reasonable and fair-minded people" to trace funds from Jon's account to the mortgage payment. *Wilson,* 168 S.W.3d 802 at 827.

## Adverse Inferences

▮ A *state* cannot obtain a judgment against a civil litigant "solely because that party refuses to testify on the basis of the privilege against self-incrimination." *In re Verbois,* 10 S.W.3d 825, 829 (Tex.App.-Waco 2000, orig. proceeding). Nevertheless, in civil cases, a *jury* may draw adverse inferences against parties who "refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.*'" *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)(emphasis original); *see In re Edge Capital Group, Inc.,* 161 S.W.3d 764, 767 (Tex.App.-Beaumont 2005, no pet); *see also* Tex.R. Evid. 513(c). A party's refusal to testify constitutes "relevant evidence" from which a jury "may draw whatever inference is reasonable under the circumstances." *Lozano v. Lozano,* 983 S.W.2d 787, 791 (Tex.App.-Houston [14th Dist.] 1998), *rev'd on other grounds,* 52 S.W.3d 141 (Tex.2001). Therefore, where "proper circumstances" exist, "silence in the face of accusation is a relevant fact not barred from evidence." *Baxter,* 425 U.S. at 319, 96 S.Ct. at 1558.

▮ We equate this rule of law to the spoliation presumption that destroyed evidence would have been "unfavorable to the spoliating party." *Trevino v. Ortega,* 969 S.W.2d 950, 960 (Tex.1998) (Baker, J., concurring); *see Lane v. Montgomery Elevator Co.,* 225 Ga.App. 523, 525, 484 S.E.2d 249, 251 (1997); *see also Wal-Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 721–722 (Tex.2003). While the nonspoliating party must still prove its case, the presumption constitutes a factor when "weighing the evidence." *Trevino,* 969 S.W.2d at 961.

Thus, the presumption's "probative value" supports the nonspoliating party's assertions, enabling him to "survive summary judgment, directed verdict, judgment notwithstanding the verdict and factual and legal sufficiency review on appeal." *Id* at 960–961. Like the spoliation presumption, where a party refuses to testify and pleads the Fifth Amendment, it is reasonable to presume that the evidence sought to be shielded would be damaging if revealed.

 The trial court instructed the jury, without objection, that "the Fifth Amendment does not forbid adverse inferences against Kenneth Flournoy and/or June Flournoy when either of them refused to testify in response to probative evidence offered against them." The Flournoys do not argue that the law prohibits adverse inferences, but that Patricia failed to meet her tracing burden. Thus, they contend that adverse inferences derived from their assertions of the Fifth Amendment served as the sole basis for the judgment. We disagree.

The Flournoys rely on *Verbois* for the proposition that adverse inferences cannot serve as the sole basis for obtaining an adverse judgment. However, *Verbois* is distinguishable from the Flournoys' case, because it involved the *State's* use of a civil litigant's refusal to testify as the *sole basis* for obtaining an adverse judgment. *See In re Verbois*, 10 S.W.3d at 829. The present case involves no governmental entity seeking an adverse judgment against the Flournoys. Neither does this case involve a situation where the Flournoys' testimony alone served as the basis for the judgment.

Rather, as civil litigants, the Flournoys' assertions of the Fifth Amendment and refusals to testify gave rise to the adverse inference, or presumption, that they sought to conceal unfavorable evidence. While the State cannot use a party's Fifth Amendment assertions to obtain an adverse judgment, Texas law allows juries to derive adverse inferences against civil litigants who refuse to testify when confronted with probative evidence. Here, the jury could reasonably conclude that the Flournoys refused to respond to questions regarding the source of mortgage payments because they did, in fact, use Jon's funds to make those payments.

Adverse inferences drawn from the Flournoys' refusals to testify neither relieved Patricia of her tracing burden, nor amounted to speculation and conjecture, but rather served as additional evidence that built on Patricia's documentary evidence. Under these circumstances, the jury could reasonably conclude that: (1) the Flournoys refused to testify because the answers would have been damaging to them; and (2) as indicated by checks written on Jon's account in the amount of the monthly note payments, the Flournoys used Jon's money to pay for the farm.

Thus, we hold that the adverse inferences derived from the Flournoys' testimony did not serve as the sole basis for the judgment, but when coupled with Patricia's documentary evidence, "would enable reasonable and fair-minded people" to trace funds from Jon's account to the mortgage payments. *Wilson*, 168 S.W.3d 802 at 827.

## Imposition of the Constructive Trust

 Where a "fiduciary or confidential relationship" exists between two parties and the "party holding property or money would profit by a wrong or be unjustly enriched if he were allowed to keep the property or money," imposition of a constructive trust is justified. *Oak Cliff Bank & Trust Co. v. Steenbergen*, 497 S.W.2d 489, 492 (Tex.Civ.App.-Waco 1973, writ ref'd n.r.e.). Because a constructive trust constitutes an equitable remedy, it

lies within the trial court's discretion. *See Stephens v. Stephens*, 877 S.W.2d 801, 804 (Tex.App.-Waco 1994, writ denied). Therefore, we review the trial court's decision under an abuse-of-discretion standard.

■ Here, the trial court imposed a constructive trust on the entire Flournoy farm. The Flournoys argue that the entire farm was not subject to a constructive trust. We have already found that Patricia adequately traced Jon's funds to the Flournoys' mortgage payments. Even assuming that Patricia merely proved commingling, the burden still shifted to the Flournoys to distinguish which portion of their personal funds contributed to purchasing the farm.

The evidence reflects that the Flournoys purchased the farm for $153,049. Payment for the farm came from two sources. First, Kenneth paid a $49,365.50 down payment. Second, the Flournoys executed a note for the remaining $103,049, payable in monthly installments of $961. According to the Flournoys, they owe approximately $50,000 on the note. In light of the checks drawn on Jon's account in the monthly mortgage amount, the history of misuse of Jon's funds, and the Flournoys' refusals to testify when questioned about the source of mortgage payments, Patricia proved that the Flournoys used Jon's funds to make at least some of those payments.

Once Patricia traced Jon's funds to the mortgage payments, the Flournoys bore the burden of distinguishing which funds came from their own account. In his deposition, Kenneth testified that he paid the down payment out of his individual settlement funds. While the evidence reflects that the Flournoys used Jon's funds to make mortgage payments, it also clearly indicates that the down payment came from Kenneth's individual funds. Because the Flournoys proved that at least a por-

tion of the purchase price was paid out of Kenneth's personal funds, the court abused its discretion by imposing a constructive trust on the entire Flournoy farm.

Nevertheless, Patricia is still entitled to a constructive trust on *part* of the farm. Subtracting the amount owed of $50,000 and the down payment of $49,365.50 from the purchase price of $153,049, the most amount that could have been paid with Jon's funds totals $53,683.50. Therefore, we hold that Patricia is entitled to a constructive trust on an undivided 35% interest in the farm.

Accordingly, we sustain the Flournoys' sole issue in part.

## CONCLUSION

Because the court abused its discretion by imposing a constructive trust on the entirety of the Flournoys' farm, we reverse that portion the judgment imposing a constructive trust and render judgment imposing a constructive trust on an undivided 35% interest in the farm. The trial court's judgment is affirmed in all other respects.

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

I concur in the Court's conclusion that Patricia Wilz met her burden of proof to establish a constructive trust on behalf of her disabled son against his father and stepmother. I dissent from that portion of the opinion wherein the majority re-determines the extent of the constructive trust imposed upon real property purchased with the proceeds from the ward's estate.

The problem in this appeal is that the majority is rendering its own judgment

rather than reviewing the trial court's. They have properly determined that Wilz, as successor guardian, proved the facts necessary for the imposition of a constructive trust on real property. In this regard, the jury determined that Wilz had proven the ward's funds had been used to purchase certain real property. The majority properly notes that, because Wilz met her burden for the imposition of the constructive trust, the burden shifted to Flournoy to show the maximum extent to which the constructive trust could be imposed on the real property. Because Flournoy failed to obtain a jury finding on this issue, to prevail on appeal, he must conclusively establish its limitation.

To calculate the extent of the constructive trust, the majority focuses on the purchase price of the property and the principal balance of the mortgage. Under the facts presented, I believe this is improper. Flournoy had the burden to show what portion of the property should not be burdened with the constructive trust. All the majority is able to do from this record is guesstimate the approximate amount of the reduction in the loan balance over the years after the purchase. This is not adequate to meet Flournoy's burden of proof.

Wilz proved that the ward's assets were used to make mortgage payments. The mortgage payments were for more than principal reduction and Flournoy made no effort to apportion the value of the property based upon the source of funds used to purchase the property. Merely looking to the reduction in the loan balance does not take into consideration that the loan payments also involved taking money from the ward's estate to pay interest and taxes related to the property.

Without some proof to support an apportionment of the benefits created by the payments made by Flournoy versus those made by the ward's estate, there is no

basis upon which we can properly disturb the trial court's judgment. The ward is being deprived of the protection of a constructive trust on property upon which the ward's money was used to pay interest and taxes. Under this approach, if Flournoy had used the ward's money to pay only interest and taxes, the ward's estate would not be entitled to the equitable remedy of a constructive trust.

Further, I note that the only source of any evidence that any part of the purchase price was paid by Flournoy came from his deposition testimony. On this record, it is not hard to conclude that the jury could have chosen to disbelieve this testimony. Because the jury could have easily disregarded this testimony, there is no basis upon which to limit the extent of the property upon which the constructive trust was imposed. The only jury finding on this claim was that funds belonging to the ward had been used for acquisition of the farm. Flournoy failed to secure a jury finding to establish what part, if any, of his funds could be traced to the purchase of the farm. It is improper for the majority to make that factual determination on appeal based on evidence the jury could have disbelieved. I would hold that the trial court properly imposed a constructive trust on the entire farm.

Thus, I concur in the judgment that a constructive trust is properly imposed on the farm, but dissent to the judgment to the extent it limits that constructive trust to a 35% undivided interest.